UNITED STATES, Appellant

v

LARRY G. BLUNK, Fireman Recruit,
U. S. Navy, Appellee

17 USCMA 158, 37 CMR 422

No. 20,110

July 28, 1967

*Commander Walter F. Brown,* USN, argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel C. R. Larouche,* USMC.

*Captain John P. Gleeson,* USN, argued the cause for Appellee, Accused.

## Opinion of the Court

FERGUSON, Judge:

Tried by special court-martial, the accused, pursuant to his provident plea of guilty, was found guilty of absence without leave, in violation of Uniform Code of Military Justice, Ar-

■■■■■■■■■■■■■■■

ticle 86, 10 USC § 886, and sentenced to bad-conduct discharge, forfeiture of $60.00 per month for six months, and confinement at hard labor for six months. The convening and supervisory authorities reduced the period of confinement and forfeitures but otherwise approved the sentence. The board of review reversed, ordering a rehearing on the sentence. The Judge Advocate General has certified that decision here upon the question:

"Were the defense counsel's statements and actions during the presentencing procedures prejudicial to the substantial rights of the accused?"

The matter in issue arose in the following manner. After presentation of personal data regarding the accused and evidence of two previous convictions, the president, following the usual procedure, advised the accused of his right to present matters in mitigation and extenuation. To this advice, defense counsel, a certified attorney, responded:

"Mr. President, BLUNK is fully aware of his rights in extenuation and mitigation, that is, of course, his right to make a sworn or unsworn statement or have his counsel make an unsworn statement in his behalf, or have witnesses present or any other form of evidence in extenuation. It is his desire to present no such evidence and this, of course, is against the advice of his counsel and he is fully aware of the possible consequences of taking this course of action. I have a document signed by BLUNK and myself which I wish to have attached to the completed record of trial as an Appellate Exhibit, and to be limited to the observation of the reviewing authorities."

Upon inquiry, counsel further informed the court it was not entitled to examine the written statement to which he referred. Thereafter, the president offered the accused an additional opportunity to make any statement he might desire in his own behalf. Defense counsel reiterated that "accused stands with his previ-

ously presented desire." The president then inquired whether counsel, "for full fairness to the accused," had anything further to state, in light of his declaration that accused "was remaining silent over the objection of the counsel." Defense counsel replied that, "I don't think I am allowed to say anything at this time" and "if the accused desires that I not make a statement in his behalf I am bound by that desire." The court-martial was then instructed as to the sentence which might be imposed and retired to deliberate. It returned and adjudged the penalty stated above.

The written statement to which counsel referred, and which is included in the record as an appellate exhibit, is signed by the accused and, in its entirety, declares:

"I, F R LARRY G. BLUNK, U. S. Navy, an accused before a special court-martial, have been advised of my rights in extenuation and mitigation; that I may make a sworn or unsworn statement, or that I may have my counsel make a statement for me, in my behalf. Since I desire to receive a bad conduct discharge, I desire to make no statement, either sworn or unsworn, nor do I desire to have my counsel make a statement in my behalf. I understand that this will probably result in my receiving the maximum amount of confinement and forfeitures which a special court-martial may award; reduction to the lowest pay grade, as well as a bad conduct discharge.

"I am doing this contrary to my counsel's advise [sic]."

The board of review, referring to a previous holding in United States v Deshler, NCM 66–2715, decided December 20, 1966, in which it expressed the view that counsel should not spread upon the record the fact that accused, contrary to his attorney's advice, refused to allow presentation of matters in mitigation and extenuation, concluded that "the cumulative effect of the defense counsel's statements and tactics after the findings resulted in prejudice to the accused with re-

spect to the sentence." Accordingly, it ordered a rehearing.

The problem presented by an accused who refuses to permit his attorney to present anything in mitigation and extenuation in the hopes of obtaining a punitive discharge from the military service is a difficult one. It places defense counsel in a quandary. This Court has consistently demanded "the highest degree of professional competency . . . of an appointed defense counsel." United States v Horne, 9 USCMA 601, 604, 26 CMR 381, 384. And, in guilty plea cases, we have emphasized the duty and responsibility of defense counsel to marshal evidence which would have a tendency to cause a court-martial to adjudge a lesser sentence. Thus, Chief Judge Quinn, speaking for the Court in United States v Allen, 8 USCMA 504, 25 CMR 8, stated, at page 507:

> "The sentence proceeding is an integral part of the court-martial trial. United States v Strand, 6 USCMA 297, 306, 20 CMR 13. Plainly, therefore, counsel's duty to represent the accused does not end with the findings. Remaining for determination is the question of the accused's liberty, property, social standing—in fact, his whole future. And his lawyer is charged with the substantial responsibility of appealing on his behalf to the conscience of the court."

On the other hand, counsel, whether appointed or privately employed, is undeniably an advocate for the accused. As a member of the Bar, he is duty bound, "by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law." Canon 5, Canons of Professional Ethics of the American Bar Association. While counsel may control the incidents of a trial, see Canon 24, supra, and may not be required to do anything inconsistent with his professional obligations, he is nonetheless an advocate for his client and bound to follow the latter's instructions. 7

CJS, Attorney and Client, § 148. Thus, if, as here, accused instructs his counsel to present nothing in mitigation or extenuation, the attorney is bound not to do so, though he should, of course, exert every effort to sway his client's judgment, pointing out the undeniably permanent stain and other serious consequences to a young man who must henceforth be branded as one discharged from the services by an instrument bearing a less than honorable characterization. But, if his client nonetheless remains steadfast in his determination to sacrifice his character in order to gain an illusory freedom from his present responsibility and duty, counsel, though he may withdraw as such, violates no legal or ethical principle in continuing to represent him and following his instructions to present nothing on his behalf.

Nevertheless, defense counsel frequently finds himself still enmeshed in a dilemma. Having followed the accused's instructions and faithfully implemented his desires, he is frequently confronted at the appellate level with an affidavit from his client —who suddenly aware of the consequences of his sentence—now avers that his attorney deserted him at the trial by offering nothing on his behalf. See United States v Allen, supra, and United States v Friborg, 8 USCMA 515, 25 CMR 19. The same situation may, indeed, arise on the basis of allegations by appellate defense counsel on the basis of simple absence of evidence from the record, quite without regard to what actually took place between the trial attorney and his client below.

Understandably, therefore, defense counsel presented with a situation such as that depicted herein have sometimes sought in advance to protect themselves against later assertions that they were incompetent or disloyal to their clients. In general courts-martial, no problem arises, for the accused's desires may be made known to the law officer in an out-of-court hearing, and the issue resolved at once on the record. In special courts-martial, however, no such hearings are permissible. United States v

160

Baca, 16 USCMA 311, 36 CMR 467. Moreover, the court-martial is made up entirely of laymen, who have little if any understanding of the attorney-client relationship and who become at once befogged by introduction of this extraneous matter for their consideration.

Hence, we believe the better practice in any case is for counsel, if he desires to protect himself ■■■ against later, unjustified attack, to secure a statement in writing from his client and retain the same in his possession. In event of the accused's later disavowal of meaures for which he himself is responsible, it can be made available as evidence that the allegations are in fact false. And certainly we would not expect any appellate attorney, as an officer of the court, to level an attack on trial defense counsel without first making inquiry of their mutual client in order to ascertain the facts.

From the foregoing, it should be apparent we agree with the board of review that defense counsel erred in advising the court that accused, acting contrary to his advice, desired to present nothing in extenuation and mitigation. The matter of his instructions should have remained between him and his client until an attack was leveled at his competency and loyalty. To act otherwise was to introduce into the trial a matter which was neither material nor relevant to the single issue which the court had to resolve. Nevertheless, the question of prejudice is an entirely different matter.

The ultimate issue here is simply whether there is presented by reason of the error a fair risk ■■■ that the court was affected in its deliberations on the sentence by the matter thus revealed. We conclude there was none, and that the board erred in its contrary determination. First, the sentence adjudged is precisely that which the accused himself sought and of which he has not at any level since complained. Indeed, it appears he did not desire representation before the board of review, nor has he disavowed the statements of his counsel below in any respect. He here stands convicted by his plea of absence without leave from September 5, 1966, to October 19, 1966. He had been twice previously convicted of the same offense, for absences extending from July 1, 1965, to July 15, 1965; July 17, 1965, to July 31, 1965; and November 29, 1965, to February 25, 1966, respectively. Accused entered the service on January 28, 1965. Considering the period of his absences and the sentences to confinement at hard labor previously adjudged, it is apparent he has performed almost no duty since his enlistment in the Navy. Weighed against such a record, there is simply no fair risk that he was prejudiced by his counsel's statement that accused's desires were contrary to his advice. Indeed, the inference to be drawn from the statement is that counsel had something to present in Blunk's favor, but was prohibited from doing so. In consequence, we answer the certified question in the negative and reverse the board of review.

The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Navy. Further review proceedings will be conducted by the board in a manner not inconsistent with this opinion.

Chief Judge QUINN and Judge KILDAY concur.