IN THE CASE OF


UNITED STATES, Appellee

v.

Amanda L. GILBREATH, Airman First Class
U.S. Air Force, Appellant


No. 01-0738


Crim. App. No.  34091


United States Court of Appeals for the Armed Forces

Argued February 6, 2002

Decided July 11, 2002


SULLIVAN, S.J., delivered the opinion of the Court, in which
GIERKE and EFFRON, JJ., joined.  BAKER, J., filed an opinion
concurring in the result. CRAWFORD, C.J., filed a dissenting
 opinion.


## Counsel


For Appellant:    <u>Captain Jefferson    B.    Brown</u>  (argued); <u>Lieutenant
    Colonel Beverly N. Knott</u> and <u>Lieutenant Colonel Timothy W. Murphy</u> (on
    brief);  <u>Captain Shelly Schools</u>.




For Appellee:  <u>Captain Mathew J. Mulgarger</u> (argued); <u>Colonel Anthony Dattilo</u>
    and <u>Lieutenant Colonel Lance B. Sigmon</u> (on brief).




Military Judge:  Steven A. Gabrial


<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

United States v. Gilbreath, No. 01-0738/AF

Senior Judge SULLIVAN delivered the opinion of the Court.

On March 9, 2000, appellant, an airman first class, was tried by a general court-martial composed of a military judge alone at Nellis Air Force Base, Nevada.  She pleaded guilty to a single specification of wrongfully using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a.  She was sentenced by a military judge to a bad-conduct discharge and reduction to E-1.  On April 26, 2000, the convening authority approved this sentence, and the Court of Criminal Appeals affirmed on May 31, 2001.

Review was granted in this case on November 8, 2001, on two issues specified by this Court.  We asked:

I

WHETHER IT WAS ERROR FOR THE STAFF JUDGE ADVOCATE TO NOT SERVE ON THE DEFENSE AN ADDENDUM WHICH RECOMMENDED THAT THE CONVENING AUTHORITY APPROVE THE SENTENCE BECAUSE IT HAD BEEN ADJUDGED BY A "JURY."

II

WHETHER THE STAFF JUDGE ADVOCATE'S RECOMMENDATION TO THE CONVENING AUTHORITY PROPERLY ADDRESSED THE DIFFERENCES BETWEEN CLEMENCY AND SENTENCE APPROPRIATENESS.

United States v. Gilbreath, No. 01-0738/AF

We hold that prejudicial error occurred when the staff judge advocate failed to serve his addendum on the defense before the convening authority took his action in this case.  See United States v. Catalani, 46 MJ 325 (1997)(holding that failure of staff judge advocate to serve addendum on defense when it relied on prior sentencing decision of the "seniormost military judge in the Pacific" was prejudicial error).[1]

Appellant was a nineteen-year-old airman with less than three months active duty served at the time of her offense.  She admitted to a single use of cocaine with a civilian and another servicemember in November of 1999 in a hotel room in Las Vegas, Nevada.  She became ill but did not require medical attention. At her court-martial, appellant requested trial by military judge alone, and she pleaded guilty to the charged offense.  She had no pretrial agreement and no prior disciplinary record.  She made an unsworn statement accepting responsibility for her actions, recognizing that her military career was over, and asking for a chance to start over in civilian life. (R. 72)  Her defense counsel argued against confinement (R. 82) and called several  witnesses who testified to her traumatic childhood, including her rape by her stepfather, and her potential to rehabilitate herself.

_____

[1] In view of our resolution of the first issue in this case, we need not

On March 9, 2000, the military judge in this case imposed a sentence of a bad-conduct discharge and reduction to E-1. The staff judge advocate in his original recommendation recommended that the sentence as adjudged be approved by the convening authority. It was received by defense counsel on April 12, 2000.

On April 24, 2000, appellant's defense counsel submitted a request for clemency to the convening authority stating that "AB Gilbreath's sole request is that the Bad Conduct Discharge be upgraded to a general discharge." She said:

> 3. A Bad Conduct Discharge is not necessary to rehabilitate AB Gilbreath or to deter others from committing like offenses. AB Gilbreath was new to the military and had never lived away from home before. Both before and after charges were preferred, AB Gilbreath was a good duty performer, as evidenced by the character statements submitted during sentencing. AB Gilbreath spent many months waiting to be able to plead guilty, and waiting to testify against her good friend. These experiences have taught her a great deal and have been a powerful incentive for her to conduct herself more responsibly. A federal conviction and end of her Air Force career is ample deterrence. She has accepted full responsibility for her crimes and is determined to be a good, responsible citizen. AB Gilbreath is 19

---

answer the second specified issue.

years old.  Her crimes must cost AB Gilbreath her Air Force career, however, they need not jeopardize her future.  This federal court conviction will cause her difficulty enough in furthering her education and obtaining meaningful employment.  Accordingly, on behalf of AB Gilbreath, I respectfully request that the BCD be remitted or she be administratively discharged.

4.  In deciding upon the sentence to approve for AB Gilbreath, please consider all of the evidence put forth at trial, including the Defense Exhibits and her statement, as well as the attached letter from AB Gilbreath, and the supporting documents.  AB Gilbreath requests that you approve a sentence which gives her a second chance for a productive future as a civilian.  I respectfully ask you to disapprove the bad conduct discharge or recommend that the Secretary of the Air Force's designee substitute an administrative discharge for the punitive one in accordance with Article 74(b), UCMJ.

Appellant in her clemency statement further said:

My name is Amanda Lynn Gilbreath.  I was court-martialed on 9 Mar 00 for wrongful use of cocaine.  I was reduced from E-3 to E-1 and was given a Bad Conduct Discharge.  I am asking to have the Bad Conduct Discharge upgraded to a General Discharge.  I am asking for this because I know how difficult it is going to be for me to get a job and people are going to treat me differently.  I know I deserve to be punished, but I would like a second chance.  This was a single incident and I would never use cocaine again.  I realize how it can really mess up your future.  I have also had to testify for the government in a good friend's court-martial so this incident

> has definitely made an impact on my
> life. I am only 19 years old and I have
> a lot of life ahead of me and there are
> so many things that I would like to do.
> I need to be able to get a decent job so
> I can pay for my college, as I have no
> one to help me. Thank you for your
> consideration.

(Emphasis added.)

On April 26, 2000, the staff judge advocate prepared an addendum again recommending that the sentence as adjudged be approved. He said in pertinent part:

> SUBJECT: Addendum to Staff Judge
> Advocate's Recommendation-
> United States v. AB Amanda L.
> Gilbreath
>
> 1. Pursuant to Article 60, UCMJ, AB
> Gilbreath has submitted the attached
> clemency matters. Rule for Courts-
> Martial 1107(b)(3)(A)(iii) provides that
> you must consider these written matters
> before taking final action in this case.
> In addition, you may consider the record
> of trial, background of the accused, and
> such other matters as you deem
> appropriate. However, if you consider
> matters adverse to the accused from
> outside the record, with knowledge of
> which the accused is not chargeable, the
> accused must be notified and given an
> opportunity to respond.
>
> 2. The Defense Counsel received a copy
> of the SJA's Recommendation on 12 Apr 00
> and AB Gilbreath received a copy of the
> record of trial and the SJA's
> Recommendation on 12 April 00. Defense

Counsel made no objections to the SJA's Recommendation and submitted clemency matters on 24 Apr 00.  Defense Counsel makes a specific request to disapprove the bad conduct discharge adjudged at the court-martial or upgrade the discharge to a general discharge.  The basis for this request is the potential ramifications of a bad conduct discharge on educational and employment opportunities.  Defense Counsel also states a bad conduct discharge is not necessary to rehabilitate AB Gilbreath or to deter others.  Defense Counsel asserts that AB Gilbreath has already learned from her experience and had to testify against a good friend.  The accused also submitted a statement for your consideration, asking that her bad conduct discharge be upgraded to a general discharge, as this would enhance her opportunity of getting a decent job to pay for college.  AB Gilbreath also submitted seven statements on her behalf.

3.  I have reviewed the attached clemency matters submitted by defense. I have carefully considered AB Gilbreath's clemency request.  I am not swayed by the defense argument that the bad conduct discharge should be remitted to an administrative discharge.  The accused pled guilty to the Charge and Specification of use of cocaine and her sentencing case was heard before a jury. After hearing all matters, the jury determined a bad conduct discharge was appropriate and as such, I recommend you approve the sentence as adjudged.

4.  RECOMMENDATION:  After consideration of all matters in the record of trial, including those presented by the accused during the sentencing portion of the trial, and the matters submitted in

> clemency, I recommend the sentence be
> approved as adjudged. . . .

(Emphasis added.)


The staff judge advocate did not serve the addendum to his recommendation on the defense prior to the convening authority's action in this case. The convening authority approved the adjudged sentence as recommended by his staff judge advocate on April 26, 2000. The addendum of the staff judge was eventually served on defense counsel on May 10, 2000, when she also received the convening authority's action and a copy of the promulgating order.

___ ___ ___


Our starting point in reviewing the first specified issue is RCM 1106(f)(7), Manual for Courts-Martial, United States (2000 ed.). It states:


> (7) <u>New matter in addendum to recommendation</u>. The staff judge advocate or legal officer may supplement the recommendation after the accused and counsel for the accused have been served with the recommendation and given an opportunity to comment. <u>When new matter is introduced</u> after the accused and counsel for the accused have examined the recommendation, however, <u>the accused and counsel for the accused must be served with the new matter and given 10 days from service of the addendum in</u>

> which to submit comments.  Substitute
> service of the accused's copy of the
> addendum upon counsel for the accused is
> permitted in accordance with the
> procedures outlined in subparagraph
> (f)(1) of this rule.

### Discussion

> "New matter" includes discussion of
> the effect of new decisions on issues in
> the case, matter from outside the record
> of trial, and issues not previously
> discussed.  "New matter" does not
> ordinarily include any discussion by the
> staff judge advocate or legal officer of
> the correctness of the initial defense
> comments on the recommendation.

(Emphasis added.)

This Manual provision clearly authorizes the staff judge advocate to submit an addendum to his post-trial recommendation to the convening authority.  However, it also requires service of that addendum on the defense if it includes "new matter" and allows comment by the defense on that new matter.  See generally United States v. Norment, 34 MJ 224, 226 (CMA 1992)(citing United States v. Narine, 14 MJ 55 (CMA 1982)).  Appellant asserts that the staff judge advocate's addendum in this case introduced "new matter" which called for defense counsel notice and response.  See United v. Catalani, supra.

The Government does not contest appellant's argument that the staff judge advocate's addendum presented "new matter"

within the meaning of RCM 1106(f)(7).  Instead, it argues that appellant has not met her burden to show the failure to serve the addendum on the defense was prejudicial.  It concedes that "the addendum to the Staff Judge Advocate Recommendation (SJAR) did contain an error," (Final Brief at 1) in that the staff judge advocate erroneously advised the convening authority that a "jury," rather than a judge, had determined an appropriate sentence for appellant.  It disagrees, however, that the staff judge advocate also advised the convening authority that this jury had considered the clemency materials submitted by appellant after trial.  In sum, the Government argues, as the Court of Criminal Appeals found, that the erroneous new matter in the addendum was trivial and did not materially prejudice appellant.

Initially, we note our disagreement with the Government as to the limited scope of the new matter introduced in this addendum.  Paragraph 1 of the addendum addresses the fact that appellant submitted post-trial "clemency matters" which must be considered along with "the record of trial, background of the accused, and such other matters as [the convening authority] deems[s] appropriate."  Paragraph 2 of the addendum specifically identifies three post-trial clemency materials, including appellant's testimony at her friend's court-martial and seven

new statements submitted on her behalf.  Paragraph 3 of the addendum acknowledges the staff judge advocate's consideration of these "clemency matters," finds them unpersuasive, and states as support for his view that "[a]fter hearing all matters, the jury determined a bad conduct discharge was appropriate. . . ." In our opinion, the logical import of the staff judge advocate's words was that the members of appellant's court-martial had already considered the clemency matters submitted by the defense and found them unpersuasive, and the commander should defer to their decision.

In this light, the question before us is whether the failure to serve an addendum with this particular type of new matter in it prejudiced appellant.   See Article 59(a), UCMJ, 10 USC § 859(a).  Where erroneous post-trial reviews are involved, we have not required a showing of actual prejudice to secure appellate relief.  See United States v. Wheelus, 49 MJ 283, 289 (1998) (burden on defense to make "some colorable showing of possible prejudice" from post-trial recommendation errors). Instead, we have held that an appellant only has a burden to make some colorable showing of possible prejudice "by stating what, if anything, would have been submitted to 'deny, counter, or explain' the new matter."  United States v. Chatman, 46 MJ

321, 323 (CMA 1997).  Later, in United States v. Brown, 54 MJ
289, 293 (2000), we held that a new action was not required
where the defense on appeal fails to proffer a possible response
to the unserved addendum "that could have produced a different
result."  (Emphasis added.)

Turning to the case at bar, we note that the defense's
initial sentencing approach was to argue that confinement was
inappropriate for appellant due to her tragic childhood, her
youthful inexperience, and her otherwise outstanding military
and civilian character.  While she conceded that her military
career was over, at no time did she concede that a punitive
discharge was appropriate.  Appellant was not sentenced to
confinement, but the judge did award her a bad-conduct discharge
and a two-pay-grade reduction.  After receiving this sentence,
she mounted a post-trial effort to have her punitive discharge
set aside as also being inconsistent with her chances for
successful rehabilitation in civilian life.  She offered
additional statements from sentencing witnesses in her case, as
well as statements from two other persons.  She also noted her
cooperation with law enforcement authorities in providing
testimony in the prosecution of one of her friends.

United States v. Gilbreath, No. 01-0738/AF

The staff judge advocate's addendum was particularly directed to rebutting appellant's post-trial argument for setting aside her bad-conduct discharge. The premise of the addendum was that those members selected for court-martial duty by the convening authority had already considered the defense clemency materials and found them unpersuasive. See United States v. Catalani, supra at 328-29. The addendum further suggested that the convening authority should defer to those members' judgment on sentence.2 It might also be construed as suggesting that the convening authority not provide the independent and fresh look by command authorities required by Article 60, UCMJ, 10 USC § 860.

Id.; see also United States v Hamilton, 47 MJ 32, 35 (1997). But there was no "jury" in this case. The convening authority, perhaps inadvertently, was misled into believing that the officers he had selected to pass judgment in this case rejected the merits of appellant's clemency. This "ghost jury" not only was a new card on the table, but it was potentially a trump card. See United States v. Anderson, 53 MJ 374, 377 (2000)

---

2 As an example of such a view, General Jerome O'Malley, Commander in Chief of the Pacific Air Force, noted in a letter to the Military Justice Act of 1983 Advisory Commission on August 13, 1984: "Because the military community is both distinct as an entirety and varies from place to place and command to command, court members are in the best position to act as the conscience of the military community and to adjudge an appropriate sentence." See II Advisory Commission Report, The Military Justice Act of 1983 at 1172 (emphasis added).

United States v. Gilbreath, No. 01-0738/AF

(holding unfavorable comments on clemency by chief of staff were of devastating import).

We will not speculate on what the convening authority would have done in this case had defense counsel been properly served with the addendum and allowed to respond.  See generally United States v. Leal, 44 MJ 235, 237 (1996).  It suffices to say that defense counsel could have pointed out the faulty factual premises on which the staff judge advocate's addendum recommendation against clemency were based.  See United States v. Heirs, 29 MJ 68, 69 (CMA 1989).  She also could have made a persuasive argument that the staff judge advocate's recommendation that the convening authority defer to the judgement of the court members was also legally improper.  See United States v. Catalani, supra.  In view of the potentially pivotal nature of the new matter in this case, we conclude that these responses could have produced a different result and, accordingly, a new review and action are required.  See United States v. Brown, supra.

The decision of the United States Air Force Court of Criminal Appeals and the action of the convening authority are set aside.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to a new convening

14

authority for a new post-trial recommendation and action. Thereafter, Articles 66 and 67, UMCJ, 10 USC §§ 866 and 867, will apply.

BAKER, Judge (concurring in the result):

I concur in the conclusions of the majority.  However, in reaching this position, I do not rely on the majority's construction of the staff judge advocate's (SJA) addendum as "suggesting that the convening authority not provide the independent and fresh look by command authorities required by Article 60, UCMJ, 10 USC § 860."  _ MJ at (11).  I believe this overstates the import of the SJA's words and intent.  In any event, this is a suggestion we need not make in deciding this case.

I also do not share the majority's view that United States v. Catalani, 46 MJ 325 (1997), provides a "persuasive argument that the staff judge advocate's recommendation that the convening authority defer to the judgement of the court members was also legally improper."  _ MJ at (12).  Nor is it necessary to put such an argument in appellant's mouth to resolve this case.  In Catalani, this Court concluded:

> The issue before us is not whether it was permissible for the SJA to prepare an addendum that sought to bolster his initial recommendation through references to the stature and actions of the military judge.  The issue, which we decide in appellant's favor, involves failure to comply with RCM 1106(f)(7), under which appellant should have had an opportunity to receive notice of the new matter, along with the concomitant opportunity to respond to and correct the misleading information

> contained therein before the convening authority
> acted on appellant's clemency petition.

46 MJ at 330.  It is this proposition for which appellant cites <u>Catalani</u>.  Point made and taken.

Finally, in concurring in the majority's result, I place no weight on footnote three, which is not relevant to the outcome of this case and was not argued by either party.

United States v. Gilbreath, No. 01-0738/AF

CRAWFORD, Chief Judge (dissenting):

Although the Government conceded that the staff judge advocate's (SJA) addendum presented new matter within the meaning of RCM 1106(f)(7), Manual for Courts-Martial, United States (2000 ed.), there has been no showing of prejudice under the facts of this case.

On the weekend of November 12-14, 1999, appellant and several other airmen rented a motel room in the civilian community of Las Vegas, Nevada. A friend visited her and brought a quantity of powdered cocaine, which they snorted. After the First Sergeant received information from a confidential source about the party, he requested that appellant provide a urine specimen. The urine specimen contained 3,587 nanograms per milliliter, showing more than casual use on a weekend.[*] This is not the type of individual that any convening authority would keep in the service.

The majority parses the words in the SJA addendum in such a manner as to indicate that the convening authority was misled. ___ MJ at (9). He was not. Prior to taking action, the convening authority was presented with a number of documents. Among them was the initial SJA recommendation, which defense counsel received on April 12, 2000. Attached to this

---

[*] The cutoff level for reporting cocaine use is 100 nanograms per milliliter. Memorandum, Department of Defense, Coordinator for Drug Enforcement and

recommendation was AF 1359, Report of Result of Trial.    This

report clearly reflected that appellant's court-martial was

before a "judge alone," not a "jury."

Additionally, when one examines the clemency materials

submitted by defense counsel in accordance with RCM 1105 and

1106(f)(4), it is blatantly obvious that these letters were

written subsequent to appellant's court-martial.  Most of them

are dated April 20 or 21, 2000, and many speak to the sentence

appellant received.  Since matters in extenuation and mitigation

are presented to the sentencing authority of a court-martial

prior to a sentence being announced, there is no logical way

that the convening authority could or would have inferred that

appellant's RCM 1105 submission was a rehashing of matters

previously submitted to the sentencing authority (regardless of

who that was).  While the SJA addendum was in error, there was

no confusion on the part of the convening authority as to the

sentencing authority, and what clemency material had been

previously considered by the military judge.

---

Policy Support, Subject:  Drug Urinalysis Testing Levels, para. 2 (May 12,
1997).