UNITED STATES of America

v.

Sean C. DANLEY, Lance Corporal
(E–3), U.S. Marine Corps.

NMCCA 201000677.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 31 Aug. 2010.

8 Nov. 2011.

For Appellant: CDR R.D. Evans, JAGC, USN.

For Appellee: LCDR S.F. Sarkany, JAGC, USN.

Before J.A. MAKSYM, J.R. PERLAK, R.E. BEAL, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

BEAL, Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of unauthorized absence and missing movement by design in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887. The military judge sentenced the appellant to 90 days confinement, reduction to pay grade E–1, and a bad-conduct discharge. A convening authority approved the sentence as adjudged and, except for the punitive discharge, ordered it executed. In accordance with a pretrial agreement, the convening authority suspended all confinement in excess of 75 days for a period of 12 months from the date of sentencing.

The appellant assigns one error: during the post-trial review of his case the appellant's trial defense counsel (TDC) improperly disclosed a confidential and privileged communication made by the appellant, i.e., "I do not desire to remain in the Marine Corps," which adversely affected the convening authority's clemency consideration. Appellant's Brief of 8 Feb 2011 at 4. In response, the Government does not dispute the impropriety of the disclosure, but argues there is no evidence that the convening authority saw the statement and that, even if the convening authority did see it, the appellant was not materially prejudiced by the disclosure because he "received the result he desired." Government's Brief of 11 Apr 2011 at 5. In a post-trial affidavit, the TDC states he made

the disclosure without his client's express authority, believing he had implicit authority to do so.[1] We find the TDC's disclosure of his client's confidential and privileged communication was unauthorized. Furthermore, we find that unauthorized disclosure of the appellant's confidential and privileged communication directly contradicted the appellant's request for no punitive discharge made in his unsworn statement. Under the circumstances of this case, we find the unauthorized disclosure of the appellant's confidential and privileged communication materially prejudicial to the appellant's substantial rights. Art. 59, UCMJ. Additionally, due to the circumstances affecting the post-trial review of this case, even if the appellant did not suffer material prejudice, we find that the sentence as approved by the convening authority should not be affirmed. Art. 66(c), UCMJ. We will take corrective action in our decretal paragraph.

### Background

In his unsworn statement to the court, as presented through counsel, the appellant stated that "I am proud to claim the title of a United States Marine...." Record at 76. He admitted to "[r]ealizing that this may be the end of my military career," and discussed contingencies of what he would do "[i]f I am to be separated from the military." *Id.* at 79. However, the appellant never asked for a punitive discharge at his court-martial. Additionally, during his sentencing argument, the TDC specifically requested that the appellant "not be given a bad-conduct discharge." *Id.* at 89.

On the day of his trial, the appellant signed a letter addressed to "Defense File." The subject of the letter was, "Written waiver to submit clemency matters" and cited RULES FOR COURTS-MARTIAL 1105 and 1106, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), as references. The contents of the letter affirmed the appellant understood: 1) his rights to submit clemency, 2) he could waive his rights, 3) waiver of his rights to submit clemency would be irrevocable, and 4) submission of such matters would be his best chance for any sentence reduction. Letter to Defense File of 31 Aug 2010. The letter also advised the TDC that the appellant did "not desire to remain in the Marine Corps," and did "not desire to pursue post-trial clemency." *Id.* The letter then provided an explicit instruction: "Consequently, I am directing [the TDC] not to submit clemency matters on my behalf after my court-martial." *Id.* The letter concluded: "Understanding the above, I hereby waive my right to submit additional matters pursuant to the reference." *Id.*

Following trial, the TDC received service of the staff judge advocate's recommendation and indicated by endorsement that: 1) he had no comments or corrections to submit, and 2) he would not submit matters pursuant to R.C.M. 1105 or 1106. Nonetheless, without garnering permission from his client, the TDC submitted the appellant's confidential and privileged correspondence described in the preceding paragraph. Furthermore, this letter was attached to the record, appearing after the SJAR and the written service of the SJAR and the TDC's endorsement.

The convening authority took action on the sentence and wrote: "Prior to taking this action, I carefully considered the results of trial, the Staff Judge Advocate's recommendation, any matters submitted by the defense under Rules for Court–Martial 1105 or 1106(f), the personnel record of the accused, and the entire record of trial." Special Court–Martial Order and Convening Authority's Action of 7 Dec 2010.

### Discussion

#### A. *Introduction*

This case highlights a frequent misapplication of the guidance that was provided to trial defense counsel in *United States v. Blunk*, 37 C.M.R. 422, 1967 WL 4281 (C.M.A. 1967). The guidance was intended to avoid needless appellate litigation over matters involving ineffective assistance of counsel (IAC) during the presentencing phase of trial. As a result of this misapplication, appellate litigation related to post-trial error continues to abound. Under most circumstances where this type of error occurs, we have

---

1. On 17 June 2011, we ordered the Government to obtain an affidavit from the TDC stating whether or not the appellant authorized the disclosure of his letter. We also ordered the production of any records documenting the appellant's authorization of this disclosure.

found it to be harmless. This case is different.

In *Blunk*, the then-Court of Military Appeals recognized a recurring dilemma faced by defense counsel when a client's foremost desire was to be separated from the service and, in furtherance of that desire, instructed his or her counsel to either: 1) actively seek a punitive discharge, or 2) withhold matters in mitigation or extenuation which might otherwise persuade the sentencing authority against imposing a punitive discharge. *Id.* at 424–25. During the appellate review of cases following this pattern, appellants would oftentimes seek relief under a claim that their defense counsel was ineffective.

The *Blunk* court recognized the legitimate desire of trial defense counsel to protect themselves from spurious allegations of ineffective assistance. That court advised practitioners who represent such a client to procure from the client a letter which explains the attorney advised against pursuing a punitive discharge, but has nonetheless complied with the client's express wishes which were contrary to that advice. *Id.* at 425. The court advised counsel to retain this letter to rebut later claims of ineffectiveness. Over time, trial defense counsel adopted this prophylactic measure to also guard against claims of IAC during the post-trial review of a case wherein the client had similarly instructed his attorney not to submit matters in clemency. Today these types of letters, whether presented to a court-martial during a presentencing case or presented to review authorities during post-trial review, are often referred to in the sea services as *"Blunk"* letters. *United States v. Williams*, 57 M.J. 581, 583 (N.M.Ct.Crim.App.2002).

Notwithstanding the legitimacy of the practice for obtaining these types of letters, we emphasize the importance for trial defense attorneys to safeguard the confidentiality of their clients' privileged communications unless disclosure is authorized, e.g., the client specifically authorizes disclosure, or a client attacks the effectiveness of his or her attorney, thus waiving the privilege. *Id.* at 583.[2]

Unfortunately, since *Blunk*, improper disclosure of client communications has been a recurring subject of appellate litigation. *See* (in chronological order) *United States v. Doctor*, 41 C.M.R. 785, 1969 WL 6422 (N.C.M.R. 1969); *United States v. Sharrock*, No. 90 3841, 1991 CMR LEXIS 867, unpublished op. (N.M.C.M.R. 19 Jun. 1991); *United States v. Hunter*, No. 91 1289, 1991 CMR LEXIS 1466, unpublished op. (N.M.C.M.R. 5 Dec. 1991); *United States v. Pham*, No. 91 1683, 1992 CMR LEXIS 31, unpublished op. (N.M.C.M.R. 24 Jan. 1992); *United States v. Miller*, No. 91 1552, 1992 CMR LEXIS 744, unpublished op. (N.M.C.M.R. 30 Oct. 1992); *United States v. Adame*, 57 M.J. 812 (N.M.Ct.Crim.App.2003); *United States v. Barbee*, No. 200900452, unpublished op. (N.M.Ct.Crim.App. 11 Mar. 2010). We emphasize once again, as we did in *Williams*, **"defense counsel should not place such information before the court-martial, the staff judge advocate, or the convening authority."** *Williams*, 57 M.J. at 583 (emphasis added).

## B. *Error*

■ The case at bar is similar to the many cases we have addressed over the years in which defense counsel prematurely and unjustifiably disclosed confidential and privileged communications contained within their clients' letters. In this case, the appellant did not expressly authorize the disclosure of his letter. Furthermore, we find that the appellant's defense counsel did not have implicit authority to make the disclosure and cannot discern any advantage that would have inured to the appellant's benefit

2. Our "Rules of Professional Conduct" also explicitly mandate that attorneys practicing under the cognizance of the Navy Judge Advocate General maintain the confidentiality of client information: "A covered attorney shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation.... A covered attorney may reveal such information to the extent the covered attorney reasonably believes necessary to establish a claim or defense on behalf of the covered attorney in a controversy between the covered attorney and the client...." Judge Advocate General Instruction 5803.1C, Rule 1.6(a) and (c) (Ch–1, 10 May 2010).

through the disclosure. Further still, the appellant never waived the privilege by claiming his counsel's failure to submit clemency matters constituted ineffective representation. Under these circumstances, we find no basis for the disclosure of the appellant's confidential and privileged communication and find that the disclosure was improper and made erroneously. *Id.*

The person authorized to take action on the sentence has a legal obligation to first consider any matters submitted by the accused. Art. 60, UCMJ. In the absence of any extrinsic evidence to the contrary, we presume the convening authority comported himself with the mandates of the Code and reviewed the matters submitted on the appellant's behalf by his defense counsel and were attached to the staff judge advocates written recommendation. Likewise, we will not question the convening authority when he stated that prior to taking action in this case, he "carefully considered ... any matters submitted by the defense under Rules for Court–Martial 1105 or 1106(f) ... and the entire record of trial." Accordingly, we find this matter was placed before the substitute convening authority and that he read it.

### C. *Prejudice*

■ Up until 1998, military appellate courts would presume prejudice when addressing errors in the post-trial review of a case. *United States v. Chatman*, 46 M.J. 321, 323–24 (C.A.A.F.1997). In *Chatman*, the Court of Appeals for the Armed Forces (CAAF) expressed concern with the large number of cases coming before the court involving issues of new matter being asserted in addenda to staff judge advocate's recommendations (SJARs), where the appellant had been deprived of the opportunity to comment on the new matter. *Id.* In the interest of judicial economy, the court announced that in these "new matter" cases, it would henceforth no longer presume prejudice, but would instead require the appellant to make a colorable showing of possible prejudice by demonstrating what, if anything, would have been submitted to "deny, counter, or explain" the new matter. *Id.*

The court first applied the "colorable showing" standard in *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F.1998), a case involving an error in the original SJAR. Since *Wheelus*, the "colorable showing" requirement has been applied generally to all types of post-trial review errors. *See United States v. Rosenthal*, 62 M.J. 261, 263 (C.A.A.F.2005) (defense counsel failed to ensure the appellant was aware of his rights to submit matters in clemency upon remand of his case for new post-trial review); *United States v. Taylor*, 60 M.J. 190, 194 (C.A.A.F. 2004) (SJA improperly prepared recommendation in post-trial review over defense's objection that the SJA was disqualified from commenting on the case); *United States v. Gilbreath*, 57 M.J. 57, 62 (C.A.A.F.2002) (defense not served addendum staff judge advocate's recommendation containing new matter); *United States v. Lee*, 52 M.J. 51 (C.A.A.F.1999) (defense counsel's concession of the appropriateness of a punitive discharge when submitting clemency matters). But the nature of the error in this case raises a question as to whether the burden placed upon the appellant to make a colorable showing of possible prejudice is appropriate when considering the nature of the error and its obvious effect.

The *Wheelus* court identified three categories of recurring errors that occurred during an appellant's post-trial review: 1) errors in the SJAR; 2) assertion of new matter in an addendum to the SJAR to which the accused was denied an opportunity to comment on the new matter; and 3) various "lawyer problems" regarding an accused's representation during the post-trial review of his or her case. *Wheelus*, 49 M.J. at 286–87. As to those cases dealing with 'lawyer problems' the court said, "At least with respect to cases involving the absence of defense counsel during post-trial proceedings, a majority of this court agrees in principle that the error can be tested for prejudice and that the appellant has the burden of establishing what counsel 'would have said in response to the SJA's recommendation.' *In, general, however, resolution of lawyer problems remains problematic.*" *Id.* at 287 (emphasis added) (internal citation omitted).

The case at bar involves a "lawyer problem"; a lawyer who *was present* during the post-trial proceedings and who, contrary to his client's instructions *not* to submit clemency matters, *did* submit matters; i.e., his client's statements that he no longer desired to remain in the Marine Corps and did not desire to pursue post-trial clemency.

This is not a case of faulty post-trial review arising from someone outside the attorney-client relationship such as the staff judge advocate or the trial counsel. Nor is it one arising from the inaction of a newly appointed defense counsel failing to establish an attorney-client relationship or to determine what his client may have desired. In those types of cases, it is eminently reasonable for appellate courts to require the appellant to come forward on appeal and state what he would have done differently to counter the adverse effects of one of these outsiders' actions. The error in this case does not fall into this category of errors, but rather stems from the appellant's attorney who, without authority, disclosed confidential matter to the convening authority which could only damage his client's legal position. When the counsel for the appellant is the one who commits an error of the sort present in this case, we question the fairness or the utility in asking the appellant to come forward on appeal to state what he would have done differently; the answer is obvious, he would have had his counsel follow his instructions, i.e., submit nothing. This is not the type of post-trial error which prompted the *Chatman* court to abandon the presumption of prejudice standard in favor of requiring the appellant to make a colorable showing of possible prejudice. Likewise, the *Wheelus* court's implementation of *Chatman* specifically acknowledged some trepidation relative to adopting the colorable showing of possible prejudice standard when dealing with the "lawyer problem" category of post-trial review errors. Nonetheless, assuming the colorable showing of possible prejudice standard applies to this type of error, we find the appellant has successfully crossed the low threshold necessary to satisfy his burden. *Chatman,* 46 M.J. at 323–24.

We recognize this case is somewhat similar to *Williams,* in which we found no prejudice, but the case at bar is markedly distinguishable on two points. First, in reaching the holding in *Williams,* we noted that nothing in the record indicated that the convening authority had actually reviewed the appellant's letter. *Williams,* 57 M.J. at 582–83. In this case, as previously discussed, we find the convening authority did consider the appellant's letter.

The second distinguishing aspect of this case is that Williams specifically requested a punitive discharge during his sentencing case. *Williams,* 57 M.J. at 582–83. In the appellant's case, he never made a public, on-the-record request for a punitive discharge. Instead, he requested, through his attorney, that the military judge not include a punitive discharge when determining a sentence; it was only in his confidential and privileged communication to his attorney that he stated, in stark contrast to his public request, that he did not desire to remain in the Marine Corps and that he did not desire to pursue post-trial clemency.

The appellant has successfully made a colorable showing of possible prejudice in this case by simply alerting us to the fact that his defense counsel disobeyed his instructions to not submit any matters and improperly disclosed the appellant's letter. At the heart of the colorable showing standard is a requirement that the appellant indicate what post-trial submissions would have been different. Just as an accused legally may require his attorney to submit matter in clemency he desires the convening authority to consider, he has the right to direct his attorney to submit nothing, irrespective of his private desires stated in privileged communication to his attorney. The appellant's claim of prejudice is self-evident from the error itself: the appellant would have submitted nothing, had the right to submit nothing, and had the right to have a clemency determination made based on the record itself, rather than a statement suggesting that he desired the convening authority to approve his punitive discharge. The confidential communication improperly disclosed by the TDC undermined the appellant's on-the-record plea for

no punitive discharge. Had the post-trial review been conducted without this error, the convening authority, and the staff judge advocate who advised him, would never have had the appellant's statement indicating his desire to get out of the Marine Corps before them when the convening authority considered whether to grant clemency. Likewise, no appellate review authority would be cognizant of the appellant's confidential desires to not remain in the Marine Corps. Certainly, we should not be permitted to rely upon that confidential communication to determine whether or not the appellant "received the result he desired." Government Brief of 11 Apr 2011 at 5. Furthermore, we must acknowledge that the appellant's stated desire to not remain in the Marine Corps in no way equates to a request for a punitive discharge, which carries with it a myriad of severe consequences. Accordingly, we reject the Government's argument that the appellant merely received that which he desired and we find the TDC's disclosure of the appellant's confidential and privileged communication materially prejudiced the appellant's substantial right to a full and fair clemency consideration by the convening authority. Art. 59(a), UCMJ; *United States v. Travis,* 66 M.J. 301, 304 (C.A.A.F.2008).

Even if we found the appellant failed to make a colorable showing of possible prejudice as set forth under *Wheelus,* we still would not affirm the sentence. Courts of Criminal Appeals "may affirm only . . . such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ, 10 U.S.C. § 866(c). This broad power to do justice under Article 66(c) is not constrained by legal doctrines which would normally preclude relief, so long as we exercise that authority in cognizance of some legal standard. *United States v. Nerad,* 69 M.J. 138, 146–47 (C.A.A.F.2010).

If an appellate court determines that an appellant's confidential communication to his defense counsel was improperly disclosed, it may determine whether the appellant was prejudiced based upon the content of that communication taken in context with the rest of the record. *United States v. Marcum,* 60 M.J. 198, 210 (C.A.A.F.2004). For the reasons stated above, we find the content of the disclosure, taken in context with the appellant's public request for no punitive discharge, interfered with the appellant's right to a full and fair clemency consideration by the convening authority. Accordingly, on the basis of the entire record, and considering the nature of the error and its apparent prejudice, we find the sentence should not be approved. Art. 66(c), UCMJ.

### D. *Remedy*

Having identified prejudicial error in this case, we have the option of granting the appellant meaningful relief or returning the case to the Judge Advocate General for a remand to a convening authority for a new post-trial recommendation and action. *Wheelus,* 49 M.J. at 289. We realize that disapproval of the bad-conduct discharge would completely "moot the claim of prejudice" attendant with the error in this case. *Id.* at 288. Disapproval of the punitive discharge might also have the salutary effect of spurring corrective action within the community to end this recurring error.

On the other hand, the appellant stands properly convicted of unauthorized absence for a ten-month period and by design missing the movement of his unit for a deployment to a combat zone. Record at 23–41, 57. Given the serious nature of the appellant's misconduct, and in consideration of our ability to take other appropriate action to cure the taint of prejudice, we believe disapproval of the bad-conduct discharge would be unnecessarily draconian under the particular facts of this case. *Wheelus,* 49 M.J. at 288 (citing *United States v. Cook,* 46 M.J. 37 (C.A.A.F. 1997)).

### Conclusion

The appellant's letter to defense file is ordered sealed. The findings are affirmed; the convening authority's action is set aside. The record is returned to the Judge Advocate General for remand to a different convening authority who is qualified to conduct the post-trial review. Prior to forwarding the record to the convening authority for action, the staff judge advocate responsible

for preparing the new SJAR will remove the sealed *Blunk* letter, the set aside convening authority's action, the previous SJAR, and this decision from the record and reinsert those documents after the action is taken. The record will then be returned to this court for completion of appellate review.

Senior Judge MAKSYM concurs.

PERLAK, Judge (dissenting):

I credit the majority with addressing the situation where members of the trial defense bar *sua sponte* reveal attorney-client confidences, needlessly, during the post-trial review process. *See generally United States v. Williams*, 57 M.J. 581 (N.M.Ct.Crim.App. 2002). Defense counsel's duties at this stage, per RULE FOR COURTS-MARTIAL 1106(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), in no way call for the spontaneous revelation of attorney-client confidences. This case may well signal a misapprehension of *Blunk*[1] and its progeny. In endeavoring to address this misapprehension, however, the majority conflates defense advocacy guidance surrounding a request for a punitive discharge during presentencing, with a convening authority's action upon an already-adjudged punitive discharge, joined at some unknown time by an anomalous post-trial submission from the appellant's own attorney. A practical remedy is crafted, but it is disconnected from the source of the problem.

Consistent with *Williams*, I find error with the trial defense counsel in disclosing the confidential letter. Having found error, I dissent from the finding of material prejudice by the majority, and therefore everything that necessarily flows from that finding.

Trial defense counsel's official response to service of the staff judge advocate's recommendation on 29 November 2010 was to clearly indicate he had no comments, corrections, nor matters to submit per R.C.M. 1105 or 1106. The trial defense counsel's post-trial affidavit, ordered by this court, does not indicate when he made his unauthorized disclosure, only that he did so.

There is certainly an enduring and practical basis for this court to apply a presumption of regularity to document submission and review by convening authorities (CAs). However, it challenges the credibility of that practice to now extend it to a patently irregular submission, received from the trial defense counsel and appended to the record at some undetermined time, when weighed against an affirmative statement that there would be no submission.

On the state of this record, and absent more specific indicia, I cannot conclude that the CA, in taking his action, axiomatically introduced material prejudice to the appellant's substantial rights. *Cf. United States v. Barbee*, No. 200900452, unpublished op. at 3 (N.M.Ct.Crim.App. 11 Mar. 2010). The listing of documents the CA considered, (CA's Action of 7 Dec 2010; Slip op. at 8), which the majority concludes connects the CA with the appellant's confidential letter, is, with minor variation and no greater specificity, nothing more than a listing of the very matters a CA must consider in taking his action per R.C.M. 1107(b)(3).

The majority is correct in seeking to end any practice, with or without its genesis in *Blunk*, which yields the unauthorized disclosure of attorney-client confidences. In seeking to positively impact the practices of the trial defense bar, the majority takes the conspicuously indirect route of invalidating the action of a CA who bears no demonstrated connection to the trial defense counsel's unauthorized disclosure. The error is apparent. However, I cannot join in the majority in their leap to a finding of material prejudice. The state of the record is that the appellant had nothing to submit prior to the CA's action. The staff judge advocate so advised the CA. I respectfully dissent and would affirm the findings and the sentence as approved by the CA.

---

1. *United States v. Blunk,* 37 C.M.R. 422, 1967 WL 4281 (C.M.A.1967).