UNITED STATES

v.

**Allison B. DUNCAN, 241 15 5509, Ship's Serviceman Seaman (E–3), U.S. Naval Reserve.**

**NMCM 89 1398.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 29 Feb. 1989.

Decided 25 May 1990.

Lt. Jacob R. Walker, JAGC, USNR, Appellate Defense Counsel.

Maj. Gregory S. Warner, USMC, Appellate Defense Counsel.

LT Stephen Ponticiello, JAGC, USNR, Appellate Government Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

LtCol Charles L. Salomon, USMCR, Appellate Government Counsel.

Before BYRNE, Chief Judge, and FREYER and STRICKLAND, JJ.

FREYER, Judge:

The appellant was convicted, in °accordance with his pleas, of Charge I [sic] and its two specifications alleging absence without leave, the second one terminated by apprehension. He was convicted, notwithstanding his pleas, of Additional Charge I [sic] and its five specifications of larceny of various amounts of U.S. currency from a servicemember. The evidence shows that the larcenies were perpetrated by the appellant's unauthorized use of the victim's automated teller machine (ATM) card at various ATM terminals in the Atlantic Beach–Jacksonville, Florida, area. The victim testified that $820.00 was missing from his account, and the appellant's confession indicated that he had made at least five ATM transactions with the victim's card; there was, however, no evidence introduced to show a breakdown of each transaction so as to enable the trier of fact to relate it to the particular allegations of any of the five specifications.

After the defense counsel pointed out this deficiency via a motion for findings of not guilty, the prosecution was permitted, over objection, to reopen its case. The victim was then recalled, and, through him, evidence of the transactions needed to show the precise amounts of the withdrawals from his account was presented in the form of documents which he described as "a computer read-out from American Bank's main office of what goes on with the [ATM] cards." He testified that the read-out had been given to him by the president of the bank branch on base, who highlighted the transactions pertaining to his account, which were recognizable by the account number.

When the read-out was offered into evidence, the defense counsel objected in the following terms:

DC: Yes, Your Honor. This is certainly hearsay, and I can anticipate the government's response that this is a business record and should be admitted. However, if [it] is a business record, this individual is not the individual who can properly authenticate it for its introduction to the court this morning. It's a copy. He said he received it from the bank president. I know nothing more about the procedures which produced the record than that.

. . . .

DC: Also, the quality of the copy is quite poor, and I cannot tell if, in fact, it was produced by the institution that the witness so claimed it was.

The trial counsel responded to these objections as follows:

TC: Your Honor, the government's position is that we've heard testimony from the witness that he, in fact, did go to the bank; that the president of the company gave—personally gave him that computer printout; that the highlighted points were points that she highlighted. And on the form it talks about Honor ATM, and I believe it says Honor ATM Billing Verification.

I understand that the foundation—the traditional foundation for official records of business have not been made in this case, but the government feels that the issue of reliability has been satisfied by this witness' testimony.

The military judge then made this ruling admitting the evidence:

MJ: Coupled with the witness' testimony, I'm satisfied that [Prosecution Exhibit 2] is what it purports to be, and that it is records of ATM transactions with the accused's institution. So I'll overrule the defense objection and receive Exhibit 2.

When the case reached us for the first time after referral to appellate counsel, a single error was assigned, to wit:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF

APPELLANT BY ADMITTING INTO EVIDENCE, OVER DEFENSE OBJECTION, THE HEARSAY DOCUMENTS OF THE VICTIM'S BANK ACCOUNT, WITHOUT REQUIRING AUTHENTICATION AND A PROPER FOUNDATION BY A QUALIFIED WITNESS.

In its reply to the assignment of error, the Government conceded that the trial counsel had failed to lay a proper foundation for admission of the print-outs as a "record of a regularly conducted activity" exception to the hearsay rule [Mil.R.Evid. 803(6)]. The Government went on to recommend that the five specifications of the Additional Charge be consolidated into a single specification of larceny over $100.00.

Because of our concern that basic evidentiary concepts were being overlooked, we specified the four issues listed below:

## I

Is Prosecution Exhibit 2 a "record of a regularly conducted activity" or any other form of hearsay? *See State v. Armstead*, 432 So.2d 837 (La.1983). *See generally* Freed, *Computer Print-Outs as Evidence*, 16 Am.Jur. *Proof of Facts* 273.

## II

If the first question is answered in the negative, would a proper foundation for its admissibility have included a requirement to demonstrate the reliability of the process by which Prosecution Exhibit 2 was produced? [*See* Military Rule of Evidence 901(b)(9).]

## III

Did the defense objection to Prosecution Exhibit 2 (R. 60–61) include, by fair implication, an objection under Military Rule of Evidence 901(b)(9)?

## IV

If the second question is answered in the affirmative and the third question is answered in the negative, should the waiver rule set forth in Military Rule of Evidence 103(a)(1) be applied under the circumstances of this case?

Having examined the resulting briefs submitted by the parties, we consider it desirable to set forth in some detail the analysis that we believe should be employed in offering, objecting to, and ruling on computerized records of ATM transactions and other computerized records, if applicable.

■ Both the general rule against admitting hearsay and the general rule requiring authentication of real and documentary evidence have a similar purpose: to ensure that only reliable information reaches the trier of fact. The danger in admitting hearsay derives from the lack of opportunity for confrontation and cross-examination of whoever made the hearsay declaration, a *human* known as the declarant, and is that the declaration may be a conscious falsehood or a human error. To counteract this danger, hearsay is excluded unless it possesses indicia of reliability deemed equivalent to confrontation and cross-examination. The danger in dispensing with authentication is that real or documentary evidence reaching the trier of fact will be something other than what it purports to be. Although sharing the same ultimate purpose, the concepts are quite different. Consequently, we object to such phraseology as "to authenticate a document as a business record," when what is meant is to lay a foundation for the admissibility of the document as an exception to the general rule against the admission of hearsay.

■ In this regard, the change in terminology from "business record" to "record of regularly conducted activity" should have been helpful. If one has a record of the XYZ Corporation to offer into evidence as such, it will first be necessary to authenticate it as a record of the XYZ Corporation. Doing so, however, proves only its genuineness; it says nothing about its admissibility as an exception to the hearsay rule, because it proves nothing about the manner of its preparation or the reliability of its contents. Consequently, over proper objections, authenticating the document as

a record of the XYZ Corporation is only the first step towards admissibility of the document for the truth of its contents. Determining the next step necessitates determining whether or not the document is hearsay.

■ Hearsay is defined in Mil.R.Evid. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Implicit in the definition is that the "statement" must have been made by a human; otherwise, loss of the opportunity to confront and cross-examine can scarcely be an issue. If it is determined that the above record of the XYZ Corporation is hearsay, then, in addition to having *authenticated* it as a genuine record of that business [Mil.R. Evid. 901], the proponent must also *lay a foundation* for its admissibility under the "records of regularly conducted activity" exception to the hearsay rule [Mil.R.Evid. 803(6)].

Unfortunately, the term "business record" is ambiguously used, even by many lawyers, in both its literal sense of *any* record made, possessed, or used by a business, and its common-law sense of a record meeting the requirements of admissibility as an exception to the hearsay rule. Obviously, not every record made, possessed, or used by a business will meet such requirements; hence, the trial lawyer who *authenticates* a document as the record of a business and then looks confidently forward to its admission as a "business record" can expect to be seriously disappointed. Similarly, our military judges must be alert to the ambiguous usage of the term "business record" so as not inadvertently to exempt the proponent from the requirement to lay a proper Mil.R.Evid. 803(6) foundation, as may have happened in the instant case.

■ When a shopkeeper entered a transaction in his shopbook, at or near the time of the transaction and in the regular course of business, the shopkeeper was the declarant, and the shopbook was a business record in both the literal and the hearsay rule senses. It has, of course, scarcely been thought necessary to demonstrate

through testimonial or other proof that a pencil is a reliable implement which accurately traces the movement of the declarant's hand. Similarly, it is unnecessary to demonstrate that a typewriter accurately prints the letters and numbers that the typist (declarant) types. But when a declarant enters data into a computer, which processes them and prints them out in a different format, it may well be necessary to authenticate the print-out specially as an accurate representation of the input data, pursuant to Mil.R.Evid. 901(b)(9), in addition to authenticating the print-out generally as the genuine print-out that it purports to be, pursuant to Mil.R.Evid. 901(a). Such double authentication will then be sufficient for admissibility if, and only if, the purpose for which the print-out is offered is *merely to show which keys the operator pressed.* But if the proponent's purpose is to establish the underlying business transaction, such double authentication still does not ensure admissibility, because the operator, being human, may have deliberately or inadvertently inserted false or erroneous data. Consequently, to introduce such evidence for the truth of the matters stated therein, it may be necessary to do three things: (1) *authenticate the exhibit* as the print-out it purports to be; (2) *authenticate the process* by which it was prepared to show that it produces print-outs which accurately reflect the input data; and (3) *lay a foundation* for admissibility of the exhibit as a record of regularly conducted activity. Such data maintained in computerized form are sometimes referred to as "computer-stored" data. Print-outs of them are hearsay because they are generated by a human declarant. It is of the greatest importance to note that the keystrokes of the declarant who enters the data into the computer are not themselves the business transaction being recorded; the keystrokes are the declarant's *statement* of the transaction; hence, they may either truly or falsely, or correctly or incorrectly, record the underlying transaction.

In contradistinction to the above, there are situations where the keystrokes, themselves, are the transaction. In such cases,

the truth or falsity of the keystrokes is not the issue; the issue is what the keystrokes were, or, perhaps, when and at which terminal they were made. The human making the keystrokes is then not a declarant, because he is not making a *statement* about the transaction; he is performing the transaction, itself. If, then, a computer records the keystrokes, processes them, and produces a print-out purporting to indicate what they were, such a print-out is not hearsay. If the computer hardware and software are electronically and mechanically sound, the print-out will be an accurate portrayal of the transaction; if they are unsound, it may not be. In such a case, the print-out may well be a record of the business with which the transaction is made, but it will never be a "business record" in the hearsay-exception sense of records of regularly conducted activity. Data resulting from such a process are sometimes referred to as "computer-generated data" to distinguish them from "computer-stored data," which, as we have seen, are hearsay.

Common examples of transactions in which the keystrokes themselves are the issue are direct-dialed telephone calls and automated teller machine (ATM) transactions, such as we have here. In order to introduce entirely computer-generated print-outs of such transactions, the proponent need only (1) *authenticate the exhibit* as the print-out it purports to be; and (2) *authenticate the process* by which it was prepared to show that it produces print-outs which accurately reflect the input data. No hearsay-exception foundation need, nor could it, be laid.

Of course, just because an ATM is involved does not mean that a print-out of its activities could never be hearsay. A teller may collect individual transaction slips from an ATM and compile and input data from them into a computer. Such data would then be computer-stored, vice computer-generated, data, and any print-out of such data would be hearsay, the teller (not the customer) being the human declarant. Although we are under the impression that most ATM print-outs are entirely computer-generated, we believe that it is incumbent upon the proponent of a computer-generated print-out to be prepared to establish its computer-generated character as an integral part of its authentication.

The most direct manner of authenticating a process or system under Mil.R.Evid. 901(b)(9) would seem to be by the expert testimony of an engineer or systems analyst, but we believe that the reliability of a process or system may also be established circumstantially, as through the testimony of a user of the process or system who can describe its error-free operation over a suitable period of time. Judicial notice may also be available in some cases.

A detailed discussion of the issues and legal principles surrounding the admission of computer print-outs and related topics can be found in the authorities cited in our first specified issue. Although the legal concepts set forth above are fairly basic, we offer this opinion for whatever practical assistance it may provide to those faced with the task of offering, objecting to, and ruling upon the admissibility of ATM and other computerized records.

■ In the same vein, we take the time to note another common error in cases involving theft of funds from financial institutions. It is well established that a depositor of a bank or similar depository has no ownership rights in any specific monies of the depository, their relationship being one of creditor to debtor, not bailor to bailee nor beneficiary to fiduciary. *United States v. Jones*, 29 C.M.R. 651 (A.B.R.), *petition denied*, 30 C.M.R. 417 (C.M.A. 1960). Thus, the currency wrongfully taken or obtained by the appellant was the property, not of the cardholder, but most likely of the financial institution that owned and operated the ATM terminal which dispensed the currency to the appellant. Fortunately for the Government, so long as accused are not misled, variances as to ownership in larceny cases are not fatal and may be disregarded.

■ Applying the above principles to the instant case, we see that the testimony of the victim relative to Prosecution Exhibit 2 may be deemed sufficient, albeit barely so,

to authenticate the exhibit as a genuine copy of a record of the American Bank. Such testimony is insufficient to determine whether the record contains computer-stored data inserted into the computer by a teller from ATM transaction slips or computer-generated data generated directly from ATM terminals by exclusively mechanical or electronic means. If the former, the record is inadmissible, both because the process which produced the record has not been authenticated, and because no foundation has been laid for its admission as an exception to the hearsay rule. If the latter (which we deem the more likely), the record is also inadmissible, because the process which produced it has not been authenticated.

█ Certainly, the defense counsel's objections were sufficient to preserve the lack of Mil.R.Evid. 803(6) foundation if the exhibit was, indeed, hearsay (which we doubt); moreover, in light of the prosecution's failure to establish that the exhibit was not hearsay, we agree with the appellate defense counsel that the trial defense counsel's objection that "I know nothing more about the procedures which produced the record than that" was minimally sufficient to put the prosecution and the military judge on notice of the Mil.R.Evid. 901(b)(9) deficiency, which would affect admissibility whether the exhibit was hearsay or not.

█ In light of the other evidence in the case, including the appellant's confession to unauthorized use of the ATM card, appellate government counsel urges us to combine the five specifications of the Additional Charge into one specification alleging larceny of U.S. currency in excess of $100.00. We find that suggestion meritorious.

Specifications 1 through 5 of the Additional Charge are combined into a single specification alleging that the appellant did, at or near Atlantic Beach–Jacksonville, Florida, from on or about 11 December 1988 to on or about 20 December 1988, steal U.S. currency, of a value in excess of $100.00, the property of Aviation Boatswain's Mate Fuels Third Class David W. Gurien, U.S. Navy. The sentence has been reassessed in accordance with *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), and is, nevertheless, found to be appropriate. Accordingly, the findings of guilty, as modified herein, and the sentence, as approved on review below, are affirmed.

The court-martial order incorrectly states the date on which the sentence was adjudged. The supplementary order issued to effect the results of our decision should make the necessary correction.

Chief Judge BYRNE and Judge STRICKLAND concur.