UNITED STATES

v.

Airman First Class Amanda L. GILBREATH, United States Air Force.

ACM 34091 (f rev).

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 9 March 2000.

Decided 18 April 2003.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Major Jefferson B. Brown.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Lance B. Sigmon, and Captain Matthew J. Mulbarger.

Before BURD, Senior Judge, EDWARDS, and ORR, Appellate Military Judges.

## OPINION OF THE COURT UPON FURTHER REVIEW

BURD, Senior Judge:

On 9 March 2000, the appellant was tried by general court-martial composed of a military judge sitting alone at Nellis Air Force Base (AFB), Nevada. Consistent with her pleas, she was found guilty of wrongful use of cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged sentence consisted of a bad-conduct discharge and reduction to E–1. The convening authority approved the adjudged sentence and, pursuant to Article 76a, UCMJ, 10 U.S.C. § 876a, ordered the appellant to take leave pending completion of appellate review of her case.

On initial appeal before this Court, the appellant asked for new post-trial processing because the staff judge advocate (SJA) erroneously informed the convening authority in the addendum to the SJA recommendation (SJAR) that a "jury" sentenced the appellant. This Court disagreed with the appellant that she suffered any prejudice from the error and affirmed the findings and sentence. *United States v. Gilbreath*, ACM 34091 (A.F.Ct.Crim.App. 31 May 2001) (unpub. op.).

In granting a petition for review, the United States Court of Appeals for the Armed Forces (CAAF), reframed the issue raised by

the appellant by specifying the issue upon which the case was resolved.[1] On 11 July 2002, the CAAF set aside this Court's decision and the action of the convening authority and returned the record of trial to The Judge Advocate General for remand to a new convening authority for a new post-trial recommendation and action. *United States v. Gilbreath*, 57 M.J. 57 (2002). The CAAF determined that the incorrect reference to "jury" in the addendum to the SJAR was new matter that was, under Rule for Courts–Martial (R.C.M.) 1106(f)(7), required to be served upon the accused and counsel with the opportunity to respond before action by the convening authority. The CAAF remanded the case because neither the appellant nor her trial defense counsel was provided the required opportunity to respond to the new matter. *Gilbreath*, 57 M.J. at 60–62.

By the time the case was returned to Nellis AFB, there was a new SJA and a new convening authority. A new SJAR was prepared and served on the trial defense counsel. Apparently, the appellant was nowhere to be found, so the trial defense counsel prepared a new request for clemency and attached a copy of the appellant's original personal request. The SJAR was not served on the appellant. The SJA prepared an addendum that contained the following paragraph:

> The defense counsel received a copy of the second SJA's Recommendation on 7 Oct 02. In her 17 Oct 02 request, defense counsel, among other things, states that AB Gilbreath deserves clemency because she was a 19 year old girl at the time the offense took place, she had no prior disciplinary record, and she pled guilty and took responsibility for her actions without a pretrial agreement. **We attempted to serve AB Gilbreath a copy of the new SJA's Recommendation, but could not locate her.** In AB Gilbreath's original clemency request letter, however, she

states, among other things, that she would like to have her BCD upgraded to a general discharge so that she can get a decent job and pay for college.

(Emphasis added). On 14 November 2002, the convening authority withdrew the action taken by his predecessor in command and approved the adjudged findings and sentence. The record of trial was then forwarded for our further review. The addendum to the new SJAR was not served on the appellant or her defense counsel prior to the convening authority's action.

Under our Rules of Practice and Procedure, the parties had 7 days from notification that the record was received by the Appellate Records Branch of the Military Justice Division (AFLSA/JAJM) to submit any filings.[2] United States Air Force Court of Criminal Appeals, Rules of Practice and Procedure, Rule 2.2(b) (1 Sep 2000). Under Rule 2.2(c), if no filings are received by this Court within the 7 days, we review the case on its merits. No filings were received within the 7 days.

In our further review of this case on its merits we discovered the above-described circumstances. In an attempt to gain information that would aid in our resolution of this case, we specified the following issues:

## I.

WHETHER THE STATEMENT "WE ATTEMPTED TO SERVE AB GILBREATH A COPY OF THE NEW SJA'S RECOMMENDATION, BUT COULD NOT LOCATE HER[,]" WHICH IS CONTAINED IN THE ADDENDUM TO THE SJA'S RECOMMENDATION DATED 12 NOVEMBER 2002, IS NEW MATTER THAT SHOULD HAVE BEEN SERVED ON THE DEFENSE.

---

1. The CAAF specified two issues, but resolved the case upon the first specified issue: WHETHER IT WAS ERROR FOR THE STAFF JUDGE ADVOCATE TO NOT SERVE ON THE DEFENSE AN ADDENDUM WHICH RECOMMENDED THAT THE CONVENING AUTHORITY APPROVE THE SENTENCE BECAUSE IT HAD BEEN ADJUDGED BY A "JURY."

2. JAJM provided this notice by a memorandum, dated 11 December 2002, to both sides that informed them that the record of trial had been returned to this Court.

## II.

IF THE STATEMENT IS NEW MAT-TER, WHAT, IF ANYTHING, WOULD HAVE BEEN SUBMITTED TO DENY, COUNTER, OR EXPLAIN THE NEW MATTER.

Both parties have submitted briefs on the specified issues.[3]

█ We note at the outset that Article 60(d), UCMJ, 10 U.S.C. § 860(d), requires that the SJAR be served on the "accused." R.C.M. 1106(f)(1) requires that a copy of the SJAR be served on both counsel for the accused and the accused. This rule also provides:

> If it is impracticable to serve the recommendation on the accused for reasons including but not limited to the transfer of the accused to a distant place, the unauthorized absence of the accused, or military exigency, or if the accused so requests on the record at the court-martial or in writing, the accused's copy shall be forwarded to the accused's defense counsel. A statement shall be attached to the record explaining why the accused was not served personally.

The only information in the record of trial relating to the lack of personal service of the new SJAR on the appellant is the SJA's statement in the addendum: "We attempted to serve AB Gilbreath a copy of the new [SJAR], but could not locate her." We hold that this statement does not comply with the requirements for substituted service under R.C.M. 1106(f)(1). We will return to this holding later because it is a critical factor in our decision in this case.

█ The positions advocated by appellate counsel for both parties on the specified issues reveal a measure of irony. The appellant's appellate counsel, while arguing that the new addendum contains new matter, made the following statement: "Appellant submitted nothing to 'deny, counter, or explain' the new matter. Absent a showing of what would have been submitted, the 'new matter' in this case was so 'neutral' as to

rebut any presumption of prejudice." Appellate government counsel, while unwilling to concede that the new addendum contained new matter, stated: "While the addendum to the [SJAR] did contain information outside the record of trial, [a]ppellant was not prejudiced by this information and, therefore, is not entitled to relief." It appears then that appellate counsel for both sides are in agreement that this Court need not dwell on this case because the convening authority's knowledge of the appellant's absence is inconsequential. A brief review of the applicable law however exposes this folie a' deux.

R.C.M. 1106(f)(7), which addresses "[n]ew matter in addendum to recommendation," states:

> The [SJA] may supplement the recommendation after the accused and counsel for the accused have been served with the recommendation and given an opportunity to comment. When new matter is introduced after the accused and counsel for the accused have examined the recommendation, however, the accused and counsel for the accused must be served with the new matter and given 10 days from service of the addendum in which to submit comments. Substitute service of the accused's copy of the addendum upon counsel for the accused is permitted in accordance with the procedures outlined in subparagraph (f)(1) of this rule.

### Discussion

"New matter" includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed. "New matter" does not ordinarily include any discussion by the [SJA] of the correctness of the initial defense comments on the recommendation. The method of service and the form of the proof of service are not prescribed and may be by any appropriate means. *See* R.C.M. 1103(b)(3)(G). For example, a certificate of service, attached to the record of trial, would be appropriate when the accused is served personally.

---

**3.** While not specifically stated, the clear inference from the briefs is that the appellant remains unaccounted for.

The question whether the SJA's comments in the addendum to the SJAR are new matter is a question of law. Our superior court will review this question de novo. *United States v. Chatman*, 46 M.J. 321, 323 (1997). We hold that the SJA's statement that they attempted to serve a copy of the SJAR on the appellant but couldn't locate her was new matter because it was information from outside the record of trial and it injected an issue not previously discussed. *Id.*

The more difficult issue is the question of prejudice. In *Chatman*, the CAAF changed the rules for analyzing whether prejudice flows from the new matter. Therein, the CAAF said:

In the past we have treated new matter as "presumptively prejudicial." We have also held, however, that new matter in some cases was harmless error because it was neutral information or was "so trivial" as to be nonprejudicial. In such a case we have held that the presumption of prejudice was rebutted by the appellate record before us. *See United States v. Jones*, 44 M.J. 242, 244 (1996).

*Chatman*, 46 M.J. at 323. But then the CAAF stated that in future cases in which a petition for review is filed "asserting that defense counsel have not been served with an addendum containing new matter, we will require appellant to demonstrate prejudice by stating what, if anything, would have been submitted to 'deny, counter, or explain' the new matter." *Id.* The CAAF also said:

We believe the threshold should be low, and if an appellant makes some colorable showing of possible prejudice, we will give that appellant the benefit of the doubt and "we will not speculate on what the convening authority might have done" if defense counsel had been given an opportunity to comment. *Jones, supra* at 244; *see Unit-*

ed *States v. DeGrocco*, 23 M.J. 146, 148 (C.M.A.1987).

*Chatman*, 46 M.J. at 323–24.

The question we have asked ourselves is whether this change by the CAAF in *Chatman* affects our authority in reviewing such matters. The appellant's appellate counsel suggest correctly that when there is no prejudice, this Court may not grant relief under Article 59(a), UCMJ, 10 U.S.C. § 859(a). While appellate counsel for both sides appear quite content to have this Court not return the record for a third round of post-trial processing, the appellant's appellate counsel ask us to grant sentence relief for post-trial error under our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c). While we agree we have this authority, we decline to exercise it in the manner requested. *United States v. Tardif*, 57 M.J. 219, 223–24 (2002).

The appellant's appellate counsel claim the new matter in the addendum, i.e., that the appellant could not be located to serve her with the SJAR, was "neutral." Appellate government counsel refer to it as "a trivial administrative detail." Is it likely that a convening authority would just skip over this newly injected statement of fact? It is not. The questions that immediately arise include: Where is she? Why can't we find her? Is she absent without leave? Has she deserted? Is she alive?[4] Is she incapacitated? Additionally, a convening authority would know that an accused who has been ordered on appellate leave pursuant to Art. 76a, UCMJ, has a duty to provide a correct leave address.[5] Can it really be said that an implied suggestion that an accused has violated an order to provide an accurate and current leave address, or cares so little about her case to do so, is "neutral" or "a trivial administrative detail" when that suggestion is made unrebutted to the convening authority just prior to action? We think not. Such a

---

4. The appellant's death would require abatement of the proceedings. *United States v. Ward*, 54 M.J. 390 (2001) and cases cited therein.

5. The record contains the appellant's acknowledgement of her commander's order to provide a current leave address and to promptly report any change. The record also contains Appellate Exhibit II, Post Trial Rights Advisement, which

states in part: "It is absolutely essential that you keep your appellate counsel informed of your whereabouts.... In addition, during the time you are in excess leave status, you are still subject to military jurisdiction. The importance of staying in touch with your appellate defense counsel cannot be over emphasized."

suggestion would doom any chances for clemency.

Still the question looms of the impact of the CAAF's new rule announced in *Chatman*. We interpret the rule to mean that if an appellant does not raise the issue, it is waived. *Chatman*, 46 M.J. at 323. *See United States v. King*, 58 M.J. 110, 114 (2003) (citing *Chatman*). Further, even if raised, the burden is on the appellant to make some "colorable showing of possible prejudice." *Chatman*, 46 M.J. at 323–24, cited in *Gilbreath*, 57 M.J. at 61.[6] In the appellant's case now, her appellate counsel have not raised the issue and have declined to make some colorable showing of possible prejudice when the issue was specified by this Court. Subsequent to *Chatman*, the CAAF underscored that "an accused who seeks appellate relief from such a post-trial processing error has the burden of making a colorable showing of possible prejudice." *United States v. Brown*, 54 M.J. 289, 292 (2000).

In analyzing the authority of Courts of Criminal Appeals, our superior court has recently said:

> Our Court has consistently recognized the broad power of the Courts of Criminal Appeals to protect an accused. See *United States v. Parker*, 36 M.J. 269, 271 (C.M.A.1993). We have consistently recognized that the charter of Courts of Criminal Appeals on sentence review is to "do justice." *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A.1991); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988).

*Tardif*, 57 M.J. at 223. We view our charter to "do justice" to not be limited to sentence review.

While we agree with the direction our superior court is moving in applying waiver and assigning appellate burden, we would not be faithful to our charter to do justice if we were to strictly apply these new rules without regard to the particular circumstances of a case or the consequences of the application. The appellant's case is a test of our commitment to our charter to do justice. A straightforward application of *Chatman* would suggest that another post-trial processing is unnecessary. Appellate counsel for the appellant have even made it clear that they have no interest in having the case returned to the convening authority even though the circumstances are such that prejudice from the new matter is virtually per se.

But this case deserves a different result. What causes us to view this case as unique is that while the appellant's appellate counsel have advocated a position, there is nothing in the record to suggest that the appellant was ever located to gain information to respond to our specified issues. Our second specified issue was "if the statement is new matter, what, if anything, **would have been** submitted to deny, counter, or explain the new matter." (Emphasis added). The appellant's appellate counsel responded by saying the "[a]ppellant submitted nothing." The record supports the conclusion that the appellant never received the SJAR or the addendum and was not available to participate in the further review of her case by this Court. The appellant's appellate counsel merely told us what we already knew. Our view might have been different had appellant's appellate counsel responded that nothing **would have been** submitted to deny, counter, or explain the new matter. (Emphasis added).

We have held that the requirements for substituted service under R.C.M. 1106(f)(1) have not been complied with in this case. Given this, the nature of the new matter in the SJAR addendum, and the unaccounted for whereabouts of the appellant, justice requires new post-trial processing of this case. Art. 66(c), UCMJ.

The action of the convening authority dated 14 November 2002 is set aside. Consistent with the previous mandate of the CAAF, the record of trial is returned to The Judge Advocate General for remand to a new convening authority for a new post-trial recommendation and action. Thereafter, Articles

---

6. It might seem appropriate to cite the CAAF's *Gilbreath* opinion as a *"But see"* because the CAAF specified the issue of new matter in the addendum and supplied the analysis for concluding prejudice.

66 and 67, UCMJ, 10 U.S.C. §§ 866, 867, will apply.

Judge EDWARDS participated in this decision before his retirement.