## UNITED STATES

v.

**Airman Basic Derek J. GRESKA, United States Air Force.**

**ACM S30987.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 19 Aug. 2005.

22 Oct. 2007.

Appellate Counsel for Appellant: Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, and Captain Vicki A. Belleau.

Appellate Counsel for the United States: Colonel Gerald R. Bruce and Major Matthew S. Ward.

Before FRANCIS, SOYBEL, and HEIMANN, Appellate Military Judges.

PER CURIAM:

Contrary to his pleas the appellant was found guilty of conspiracy to commit larceny and burglary, larceny, and burglary in violation of Articles 81, 121 and 129, UCMJ, 10 U.S.C. §§ 881, 921, 929. He was sentenced to a bad-conduct discharge and confinement for 6 months. On appeal he raises four issues:

I. WHETHER THE MILITARY JUDGE ERRED WHEN SHE PERMITTED THE TRIAL COUNSEL TO REPEATEDLY ARGUE TO THE MEMBERS THAT A BAD-CONDUCT DISCHARGE WAS WARRANTED IN ORDER TO DISTINGUISH HIS SERVICE FROM THOSE WHO SERVED HONORABLY.

II. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS' ORDER THAT APPELLATE DEFENSE COUNSEL PROVIDE AN AVERMENT OF PRIOR COORDINATION BETWEEN APPELLANT AND HIS APPELLATE DEFENSE COUNSEL OR ACKNOWLEDGEMENT THAT APPELLANT CONCURS WITH THE REQUEST FOR AN ENLARGEMENT OF TIME, REQUIRING COUNSEL TO DISCLOSE CONFIDENTIAL INFORMATION IN VIOLATION OF THE PROFESSIONAL RULES OF CONDUCT AND ATTORNEY CLIENT CONFIDENTIALITY AND DUE TO COUNSEL'S REFUSAL TO PROVIDE SUCH INFORMATION THIS HONORABLE COURT PREJUDICED APPELLANT WHEN IT DENIED THE APPELLANT'S REQUEST FOR ENLARGEMENT OF TIME.

III. WHETHER THE MILITARY JUDGE ABUSED HER DISCRETION WHEN, OVER DEFENSE OBJECTION, SHE ADMITTED HEARSAY EVIDENCE ABOUT THE TIME AND DATE STAMP ON A PHOTO IN THE DIGITAL CAMERA.

IV. WHETHER SPECIAL COURT-MARTIAL ORDER NO. 1 IS IMPROPER BECAUSE THERE WAS NO AUTHENTICATION IN ACCORDANCE WITH AIR FORCE INSTRUCTION 51-201.

*Background*

The appellant was a member of the 343rd Training Squadron and resided in a student dormitory on Lackland Air Force Base, Texas. On the night of 11 November 2004, the

entire student dorm was ordered to form up and attend a Clint Black concert. Because of the last minute nature of the notification and the fact that there was no training that afternoon, not everyone assigned to the dorm could be contacted in time and a few airmen remained behind. The appellant and two others, Airman (Amn) TK and Amn TT, were among those left in the dorm. Taking advantage of the fact that essentially everyone else was away, the three hatched a plan to break into the rooms of other airmen and steal their personal belongings.[1]

While one of the group served as a lookout, the appellant and the other airman broke into several rooms and stole certain items, including a digital camera and a video game. They returned to Amn TT's room and split up their take. Amn TT testified the appellant got a digital camera and a Sony Play Station. The appellant put these items in a blue backpack and went back to his room.

When the other residents of the dorm returned from the concert they reported items were missing from their rooms. The next day a health and welfare inspection was conducted and the backpack containing the digital camera and Sony Play Station was discovered in the appellant's suitemate's room.[2] The suitemate, Amn AF, testified that the appellant told him the bag contained stolen property and asked him to hold it for him, suggesting it be stored in Amn AF's car. The property was discovered before it could be placed in the car.[3]

*Sentencing argument*

■ In his first issue on appeal the appellant contends the trial counsel's sentencing argument was improper, as he argued a bad-conduct discharge was appropriate because the appellant had not served honorably. The appellant also argues that trial counsel erred

because he characterized a punitive discharge as either a separation or retention decision. He cites *United States v. Hampton,* 40 M.J. 457 (C.M.A.1994), *United States v. Motsinger,* 34 M.J. 255 (C.M.A.1992), and *United States v. Ohrt,* 28 M.J. 301 (C.M.A. 1989), as authority. We disagree with his interpretation of trial counsel's argument in this case.

The appellant selected several themes from the government's argument to support his assertions. Although trial defense counsel successfully objected to other themes within trial counsel's sentencing argument, he did not object to these. The first was trial counsel's argument that those discharged with an honorable discharge get certain benefits from society such as "better loans" and the fact that "employers look favorably upon [honorable service]." The trial counsel's point was that a "bad-conduct discharge is also appropriate because prior military service, that's a privilege. That's a benefit."

Trial counsel also argued it was unfair to say to "airmen who act every day with integrity, with honor, who ... sacrifice for our country ... who are over in the desert ... here's the deal, you're on the same playing field as the accused[.]"

The appellant also contends trial counsel improperly argued that if a bad-conduct discharge were not adjudged, the members would be sending the message that these were not serious crimes; that you can do these things and still "be a cop in our Air Force."

Lastly, the appellant claims it was error when the trial counsel argued that the members could send a two-part message by sentencing appellant to a bad-conduct discharge. The first part of the message was "you can-

---

1. Amn TT denied the conspiracy and denied either he or the appellant were involved in the break-ins and thefts. He did, however, testify that the appellant and Amn TK came to his room the evening of the thefts to split up the items and the appellant took a Sony Play Station and a digital camera and placed them in his book bag before he left. Amn TK testified that there was a conspiracy among the three, he was the lookout, and that the actual break-ins and thefts were committed by the appellant and Amn TT. Amn TK said they returned to Amn TT's room and

split up the items. He did not know which items the appellant took.

2. The rooms are configured so that the appellant and an airman in the next room, his "suitemate," share a common bathroom.

3. Amn AF made prior inconsistent statements naming Amn TK as the individual who gave him the items.

not commit these crimes and be associated with the Air Force. You are telling [Airman Basic Greska] you have not served honorably." The second part of the message was to say to "every other airman who knows about this . . . you will not do this and serve in the Air Force."

These arguments can fairly be interpreted as arguing the long-standing principle that the members should consider the nature and seriousness of the offense and the character of the offender when considering a proper sentence. *United States v. Barrier*, 61 M.J. 482 (C.A.A.F.2005) (citing *United States v. Mamaluy*, 10 USCMA 102, 27 C.M.R. 176, 1959 WL 3587 (1959)); *see also United States v. Erickson*, 65 M.J. 221 (C.A.A.F.2007). These are hard-hitting arguments to be sure, but they are not the errors the appellant claims them to be. They are distinguishable from *Hampton, Motsinger,* and *Ohrt* because they do not suggest a punitive discharge is appropriate as a means to separate the appellant from the Air Force. The government's argument can easily be interpreted as saying that the appellant should be discharged with a bad-conduct discharge because it is a proper and fitting punishment for what he did and such a punishment will also deter other airmen from committing similar crimes.

Finally, we note that any error was waived at trial by trial defense counsel's failure to object at trial. We find that these arguments, even if they were error, did not constitute plain error and the appellant would have received the same results in sentencing even had the arguments not been made. *Erickson*, 65 M.J. at 225; *see also United States v. Powell*, 49 M.J. 460 (C.A.A.F.1998); *United States v. Ramos*, 42 M.J. 392 (C.A.A.F.1995).

### *Providing an Averment of Prior Coordination*

In his second issue the appellant indirectly challenges the legitimacy of this Court's order to appellate defense counsel to provide an averment of prior coordination with the appellant before we would grant the appellant's 11th request for enlargement of time.[4] He claims such an order requires appellate defense counsel to provide confidential information in violation of the Air Force and American Bar Association Model Rules of Professional Conduct. In order to examine this issue fully, we will provide some of the procedural history relevant to the case.

The appellant was tried by special court-martial at Lackland Air Force Base, Texas, from 16–19 August 2005.[5] His case was docketed with this Court on 24 October 2005. His first request for delay in submitting a brief in support of his appeal was filed on 19 January 2006. This was a "short form" motion citing no reasons for the request. In total, the appellant filed, and this Court granted, six short form requests for an extension of time; the last of these being filed on 12 July 2006, 11 months after his trial and nearly nine months since this case was docketed with this Court and appellate defense received the case.

On 11 May 2006, *United States v. Moreno*, 63 M.J. 129 (C.A.A.F.2006) was decided.[6]

On 10 August 2006, the appellant filed another motion for enlargement of time seeking an additional 30 day extension to submit any brief in support of their appeal. This motion stated "the demands of previously docketed cases . . . have precluded earlier consideration of appellant's case." On 8 September, 6 October, and 3 November 2006, the appellant filed motions identical to the 10 August 2006 motion. Each stated "the demands of previously docketed cases . . . have

---

4. In his brief, the appellant incorrectly stated what this Court's order was. Our order asked for "an averment of prior coordination with the appellant." It did not ask "whether or not appellant agrees to enlargements or, in the alternative, an averment from counsel that Appellant agrees with an enlargement."

5. This was the appellant's second court-martial. He was previously convicted at a special court-

martial of wrongful use of cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. He was sentenced to confinement for 105 days and forfeiture of $600.00 of pay per month for three months.

6. In *Moreno* our superior court expressed significant concern with delays in post-trial processing of courts-martial.

precluded earlier consideration of appellant's case." Each of those prior motions, which requested an additional 30 days, was granted. These were the eighth, ninth, and tenth requests for additional time. When we granted the tenth request for an extension of time, our 13 November 2006 order granting the request stated in part:

While we reluctantly grant this 10th enlargement of time, no further extension of time will be granted in the absence of compelling justification. If proffered, such justification should, at a minimum, include an explanation of what counsel has done on this case, what needs to be done, an estimated date of completion of the appellant's brief, and an averment of prior coordination with the appellant. The reasons stated in the appellant's 10th request for delay will not serve as a sufficient basis to grant any additional delays.

On 1 December 2006, the appellant filed another motion for enlargement of time. This 11th request for delay asked for 60 additional days. Acknowledging that this Court's Rules of Practice and Procedure only allows for extensions of time in 30 day increments,[7] the appellant asked for 60 days because "it is apparent to undersigned Counsel, after reviewing her current docketed cases, she will likely not be able to complete a competent review of appellant's case within the next thirty days."

Counsel then repeated the language from previous motions for enlargements of time that "the demands of previously docketed cases ... have precluded earlier consideration of Appellant's case." She then stated that "Counsel needs to read Appellant's record of trial, finish reviewing all of the volumes in Appellant's case and file an Assignment of Errors." She then stated that the "record of trial is 710 pages and 5 volumes." She estimated that she could file an assignment of errors within the next 60 days, "on or about 31 January 2007" or 15 months after the case was docketed with this Court.

In this request, counsel declined to answer "this Honorable Court's request for an averment of prior coordination." Counsel based her refusal to answer on duties imposed under the Air Force Rules of Professional Conduct (AFRPC) Rules 1.6, 2.1 and 3.4, and the American Bar Association Model Rules of Professional Conduct (ABARPC) Rules 1.6, 2.1 and 3.4, indicating she could not answer our request "absent client consent." Counsel also stated the Appellate Defense Division had requested an advisory ethics opinion from the Air Force Professional Responsibility Division concerning the requested disclosure of information and whether such a disclosure would be a violation of her duties to the appellant under Rules 2.1 and 5.4 of the Air Force Rules of Professional Conduct.[8] Counsel also requested an opinion as to whether any disclosure of "confidential information" concerning representation, absent client consent, would violate the attorney/client privilege and constitute a voluntary waiver of privilege under Military Rule of Evidence (Mil. R. Evid.) 510. The Air Force Professional Responsibility Division responded on 7 February 2007, declining to answer the inquiry, "deferring instead to the court system to assess the validity and lawfulness of its orders on a case-by-case basis."[9]

On 8 December 2006, this Court denied the appellant's 11th request for extension of time based on noncompliance with our order of 13 November 2006. On 12 December 2006, the appellant filed a Request for Reconsideration and Clarification of Denial of Motion for Enlargement of Time. Besides seeking a reconsideration of our denial of the 11th request for extension of time, "[c]ounsel request[ed] clarification of which specific request was counsel non-compliant with, resulting in the denial of Appellant's request for enlargement of time." On 13 December 2006, this Court affirmed our 8 December 2006 order denying the appellant's 11th request for an extension of time and answered counsel's question by

---

7. A.F. Ct.Crim.App. R. Prac. and Proc. 24.1(b) (5 Mar 07).

8. This request was dated 16 November 2006.

9. The Appellate Defense Division renewed its request on 13 April 2007 but again, the TJAG's Committee on Professional Responsibility and Standards declined to answer, leaving it for the courts to address.

specifically noting counsel's non-compliance with our request for an averment of prior coordination with the appellant.

In accordance with internal court procedure, the case was then placed in "Issues Joined" status and assigned to a panel pending its review under Article 66, UCMJ, 10 U.S.C. § 866. On 25 May 2007, this Court issued notice to appellate counsel that although five additional months have passed since the appellant's 11th motion for extension of time was denied, no assignment of errors was filed pursuant to R. Prac. and Proc. 5.9, *Filings Out–of–Time,* and we were beginning our review of the appellant's case pursuant to Article 66, UCMJ.

On 6 June 2007 the appellant filed a notice with this Court indicating counsel intended to file an assignment of errors "on or about 31 July 2007." Counsel stated "due to her docket and other duties Counsel has not been able to complete review of Appellant's case." On 3 August 2007, the appellant filed a Motion to Submit Assignment of Errors Out of Time and an Assignment of Errors. We granted the motion that same day. The government's Answer to Assignment of Errors was filed with this Court on 5 September 2007, 2 years and 18 days after the appellant was convicted at his special court-martial.

The appellant's assertion that he was prejudiced when this Court denied his 11th request for extension of time is without merit. In fact, the appellant fails to state any actual prejudice suffered by him at all. The only prejudice he attempts to identify in his assignment of errors is that our denial "placed Appellant in a position with this Honorable Court where the appearance is that it is not possible for Appellant to receive a fair and unbiased appellate review." He states this without citing any legal authority or reason why denying a request for extension of time would create such an appearance.

If the appellant's bare assertion were true, then any ruling that goes against an appellant could also create such an appearance. If this were the case, we would soon be out of business. Not every denial of a motion prejudices an appellant and certainly not every denial creates the appearance that he could

not receive a fair and unbiased review by this Court. We reject that notion.

Second, the appellant has in fact filed an assignment of errors that was reviewed by this Court so any allegation of prejudice is moot. He cannot now claim his right to raise issues under Article 66, UCMJ, has been prejudiced. Since an assignment of errors has been filed on his behalf, the appellant could only be prejudiced if his appellate defense counsel has been ineffective and filed a substandard brief within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Miller,* 63 M.J. 452 (C.A.A.F.2006), or he was prejudiced because of the delay in filing it, but there has been no such assertion.

■ To tackle this issue directly, we must address the root problem. Namely, does our requirement that appellant defense counsel provide an averment of prior coordination with the client force disclosure of confidential information? We hold it does not.

First, it is important to recognize that the order in question does not ask whether the appellant concurs with the request for an enlargement of time. It merely asks whether counsel coordinated with the client before the request was made. We did not ask what was discussed between counsel and client and there was no attempt to have that conversation revealed. The question can be answered with a simple yes or no. Despite appellate defense counsel's attempt to change the nature of our request, it simply did not elicit any communication between attorney and client.

Even if this Court were to request more information than we did, that inquiry does not automatically equate to an improper intrusion into the attorney-client privilege. The issue of client confidentiality often arises when the attorney-client privilege is raised in the area of "incidents of representation." Steven A. Saltzburg, et al, *Federal Rules of Evidence Manual* 501–35 (9th ed.2006). These include things like "the client's name, the amount and payment of a fee and the fact of consultation." *Id.* What we requested from the appellant in our order was nothing

more than "the fact of consultation." *Id.* (quoting *In re Shargel,* 742 F.2d 61 (2d Cir. 1984)). This type of information is incident to the representation and is not considered confidential or covered by the privilege.

What is key in understanding what type of information is covered by the privilege is whether it is information that is discussed in order to obtain legal advice. *Id.* Certain information, even if discussed between attorney and client, is just not the type of information that needs to be protected in order to ensure the client gets effective legal representation. Hence, it will not be covered by the privilege. This is why Rule 1.6 of the American Bar Association and the Air Force Rules of Professional Conduct permit disclosures that are "implicitly authorized in order to carry out the representation." A.F. R. PROF. CONDUCT 1.6 (17 Aug 05); A.B.A. MOD. R. PROF. CONDUCT 1.6 (2007).

Our superior court in *United States v. Province,* 45 M.J. 359 (C.A.A.F.1996), has recognized that revealing information "to further effective representation" does not violate Rule 1.6. There, information revealed by the attorney (his client committed two unauthorized absences rather than one) actually resulted in another charge being referred against the appellant. Here, the information sought in our order is not incriminating at all. In addition, Rule 1.6(b)(6) of the ABA's Model Rules specifically states that an attorney may reveal information in order to comply with a court order. Still, the appellant's counsel maintains she cannot answer our order.

Citing *United States v. Gilbreath,* 58 M.J. 661 (A.F.Ct.Crim.App.2003), the appellant also contends that our request for an averment of prior coordination places appellate defense counsel in the "difficult position where if their client has not provided a correct [appellate] leave address the appellate defense counsel would be revealing information in violation of client confidentiality." *Gilbreath* does not support that proposition.

In *Gilbreath,* we decided that mentioning in the addendum to the Staff Judge Advocate (SJA) recommendation that an accused could not be located was a new matter and, as such, had to be served on the appellant and her defense counsel before action could be taken. *Gilbreath,* 58 M.J. 661, 664. In that opinion, we recognized that upon being informed of an accused's post-trial absence there were many questions the convening authority might ask regarding her location, the reason why she couldn't be located, and whether she had authority to be away. *Id.* We also recognized the convening authority would be aware the accused was under an order to keep the Air Force informed of her leave address. *Id.* We decided these questions could lead the convening authority to assume the accused violated an order or cared little about her case, thus dooming her chances for clemency. *Id.* at 664–65. We then ordered new post-trial processing, even though the record did not indicate whether the appellant had ever been found. *Id.* at 665.

That case is far different than this case. We have not asked any of those questions of appellate counsel in this case, yet appellate counsel bases her entire argument on the fiction that we have. Further, the question that we have asked, whether appellate counsel has coordinated with her client before seeking an eleventh delay, could not be the basis of disciplinary action regardless of the answer.

Our order in this case also directly addresses our superior court's concern in *Moreno,* when it said "[t]here is no evidence in this case that the numerous requests for delay filed by appellate defense counsel benefited ... [the appellant] ... or that ... [the appellant] ... was consulted about and agreed to these delays." *Moreno,* 63 M.J. at 137. Knowing that there was prior coordination with the appellant at least assures this Court that the appellant was "consulted about" the delay requests. We did not take the next step and ask whether he "agreed to" the delay. This is a very different question which is not at issue here, but one, nonetheless, we have decided is also permissible, and is embodied in our current Rules of Practice and Procedure under Rule 24.[10]

10. Rule 24.1(b)(3) requires appellate counsel to

advise the Court "whether the appellant concurs

Another of the appellant's concerns is that by disclosing the fact that the appellant concurs or consents to a request for delay "could and likely would be viewed as a waiver of a demand for timely review." This assertion is a flawed statement for two reasons.

First, besides being unsupported and a gross over-generalization, this statement fails to recognize that every case, and motion, is analyzed by this Court taking into account its particular attendant circumstances. Thus, a request for delay in a 50 page record of trial, for a guilty plea to one specification, with no motions raised at trial, is not, and should not be viewed by this Court in the same manner as a 1,500 page record of trial in a contested rape or murder case with multiple issues. It is a given that one review will probably take longer than the other and delays are more justifiable in a long, complex case.

Second, and more to the point, is the false assumption in appellate counsel's statement that anyone would conclude an appellant affirmatively waives timely appellate review merely because he and his counsel have coordinated before counsel submitted the request for enlargement of time. In fact, we expect clients and counsel to consult regularly. Not keeping a client informed during appellate review raises a whole other set of problems, as was alluded to in *Moreno*. Besides, there is no reason why the averment of prior coordination should be viewed as any more of a speedy trial waiver than the request for an enlargement of time itself.

We are also well aware of our superior court's declaration in *Moreno* that failure to demand timely review should not be counted very heavily against an appellant. We recognize an appellant's position during appellate review for what it is, specifically his dependence on high-demand, assigned appellate defense counsel. Thus, the appellant's leap in logic that an "averment of prior coordina-

tion" is equal to a waiver of timely appellate review is strained to say the least.

Another important factor in this analysis is the practice, during courts-martial, of routinely asking the accused and his trial defense counsel questions that are arguably far more "intrusive" into the attorney-client relationship than the information we solicited in our order. As the government points out in their Answer to Assignment of Errors, our military justice system demands that courts determine whether an accused has been consulted and agrees with many different representational matters. Some of these include: when his counsel argues for a bad conduct discharge;[11] when there is a pretrial agreement in a case;[12] whether an accused has been subjected to any illegal pretrial punishment;[13] when an accused pleads guilty;[14] when an accused enters into a confessional stipulation of fact;[15] and when an accused waives a statutory waiting period.[16] Even the inquiry into *pro se* representation asks about an accused's previous discussions with attorneys.[17] All of these inquiries elicit information from the accused that was once discussed with his or her attorney.

For the above reasons, the appellant's assertion that informing this Court whether counsel and the appellant have "coordinated" prior to counsel submitting a request for extension of time forces counsel to reveal privileged information is without merit.

### Hearsay

■ The appellant argues the military judge erred by allowing hearsay testimony: a digital photo with a date/time stamp indicating it was taken the evening of the break-ins, while all the other airmen from the dormitory were attending a concert. As mentioned, one of the items stolen that evening was a digital camera. Testimony established

in the requested delay." UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS, RULES OF PRACTICE AND PROCEDURE, RULE 24.1(b)(3) (5 Mar 07).

11. Department of the Army Pamphlet (D.A.Pam.) 27–9, *Military Judges' Bench Book*, ¶ 2–7–27 (15 Sep 2002).

12. D.A. Pam. 27–9, ¶ 2–2–6.

13. D.A. Pam. 27–9, ¶ 8–3–14.

14. D.A. Pam. 27–9, ¶ 2–2–8.

15. D.A. Pam. 27–9, ¶ 2–7–25.

16. D.A. Pam. 27–9, ¶ 2–7–1.

17. D.A. Pam. 27–9, ¶ 2–7–2.

the appellant took this camera as his cut of the stolen property. When a photograph was taken on the camera, the date and time was electronically imprinted on the stored image when viewed on the camera's viewing screen.

The owner of the camera testified the camera was in his room just before he left for the concert. The dorm residents assembled in the parking lot as it was getting dark and marched to the concert, stayed 3 or 4 hours, and left the concert around 2100 hours to return to the dorms. One of the first things the owner of the camera noticed after returning was that his camera was missing. He testified that when the camera was returned to him there were two images on it that he did not take. The first was of a wall locker and the second was of a Caucasian hand with its middle finger extended. The electronic date/time stamp on the first stored image coincided with the date and time of the concert and the alleged thefts. There was no testimony regarding a date or time associated with the second picture. However, other testimony placed the appellant with the camera in Amn TT's room the evening of the thefts. A reasonable fact-finder could conclude the two photographs were taken close in time that same evening.

Amn TK testified that he recognized the room in the first picture as Amn TT's room. He also testified that he was of Samoan ethnicity, Amn TT was African American, and the appellant was Caucasian.[18]

When the government asked the camera's owner whether there was a date on the picture the trial defense counsel objected. The following exchange occurred:

DC: I would object to that as hearsay, the date that's on the photo.

MJ: And why is that hearsay, Counsel?

DC: Because it's a statement of assertion that's on a picture.

MJ: Are we going to be offering this picture?

ATC: Yes, we are.

MJ: Is the date on the picture?

ATC: It's not the actual picture, but it's— we're offering the camera which the picture is on, and it has, and it has the date stamped.

MJ: The date appears on the picture in the camera?

ATC: Yes Ma'am it does.

MJ: Overruled.

The witness then testified to the date and time that were associated with the picture of the wall locker stored in the camera. It was taken at 2118 hours on the evening of the thefts, a little before the dorm residents returned from the concert.

Later in the trial the actual camera, minus its battery, and the printed photograph depicting the Caucasian hand, were admitted into evidence. The defense successfully objected to the battery being in the camera. The photograph of the hand was printed without the date and time stamp on it. Ironically, because the battery was not in the camera when it was admitted into evidence, the members could not actually view the photographs and associated date/time stamps that were stored in the camera.[19] Thus, it appears the only evidence the members had concerning the date/time stamp on the stored images in the camera was the owner's testimony. This information was important to the government because it coincided with the time and date the dorm was empty except for the appellant and his co-conspirators.

We review a military judge's decision whether to admit evidence for abuse of discretion. *United States v. McElhaney*, 54 M.J. 120 (C.A.A.F.2000). If trial defense counsel fails to object at trial, we review the military judge's decision for plain error. Plain error is established when: (1) An error was committed; (2) The error was plain, or clear, or obvious; and (3) The error resulted in material prejudice to substantial rights. A service member has the burden of persuading the Court that the three prongs of the plain error test are satisfied. *United States*

---

18. The appellant was the only Caucasian among the three co-conspirators. The trial counsel argued that it was his hand gesturing in the picture.

19. The owner testified he was only able to view the two photographs after he inserted the batteries. These were removed before the camera was admitted into evidence.

*v. Hardison*, 64 M.J. 279, 281 (C.A.A.F.2007). In this case the trial defense counsel did object to the evidence as hearsay under Military Rule of Evidence 801 but did not object to its lack of authentication under Military Rule of Evidence 901.

The appellant argues that the military judge erred because the date/time stamp was hearsay. "Hearsay" is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Mil. R. Evid. 801(c). The appellant's argument thus implies that the camera made a "statement" when it recorded the date and time the photograph was taken.

This is not hearsay evidence for two reasons. First, the witness who presented the evidence was present in court and testified as to what he saw on the camera. The owner of the camera testified that the electronic date/time stamp on the stored photograph showed the photograph in question was taken on 11 November 2004 at 2118 hours. He was testifying from his own memory and he was subject to cross-examination by trial defense counsel. However, the appellant's position is that the information was admitted for the truth of the matter asserted and it is an out of court statement: that the photograph was taken on that date at that time. Second, notwithstanding this, hearsay requires a "declarant" which is defined as "a person who makes a statement." Mil. R. Evid. 801(b). Since a camera is not a person it cannot be a declarant and cannot make a statement. *See United States v. Duncan*, 30 M.J. 1284 (N.M.C.M.R.1990). Likewise there was no suggestion or evidence that this was computer-stored data (generated by a human declarant) versus computer-generated data. *Id.* The military judge was correct in overruling the trial defense counsel's objection that the time/date stamp was hearsay.

Alternatively, this information, had it been submitted under the silent witness rule, would have been subject to analysis under Mil. R. Evid. 901(b)(9) which deals with the authentication of a process or system, in this case the accuracy of camera's date/stamp function. *See United States v. Harris*, 55 M.J. 433 (C.A.A.F.2001). However, the ap-

pellant did not raise this issue at trial or on appeal. Indeed, even if it were raised on appeal it would not have been successful under a plain error analysis. Both of the appellant's co-conspirators testified the appellant took the camera with him immediately after the break-ins. This act coincided exactly with the small window of opportunity in which the camera was taken (created when the dorm was empty), as well as when it was last seen and discovered missing by the true owner. These two facts coincided with the time/date stamp the owner said he saw on the stored photographic image. Given this overwhelming amount of evidence, we are convinced the camera was taken during the concert. The date/time stamp on the photograph reflects this and admitting that evidence, even without authentication under Mil. R. Evid. 901(b), in no way resulted in material prejudice to the appellant's substantial rights.

### Lack of Authentication on the Special Court–Martial Order

The appellant is correct that Special Court–Martial Order No. 1, promulgated in conjunction with his case, was unsigned. *See* Air Force Instruction 51–201, *Administration of Military Justice*, ¶ 10.1.7 (26 Nov 2003). As such, it should be corrected.

### Conclusion

We order the promulgation of a corrected Court–Martial Order, so that it is signed by an authorized person. Notwithstanding the unsigned Court–Martial Order, the findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are

AFFIRMED.